IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHUNECE JONES-BROADWAY, as ADMINISTRATOR to the ESTATE OF MICHAEL BROADWAY, <br><br> Plaintiff, <br><br> v. <br><br> ILLINOIS DEPARTMENT OF CORRECTIONS, *et al.*, <br><br> Defendants. | Case no. 1:24-CV-11700 <br><br> The Hon. CHARLES P. KOCORAS <br><br> The Hon. HEATHER K. MCSHAIN |

**DEFENDANTS' PARTIAL MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW PURSUANT TO FEDERAL RULE 12(b)(6)**

Defendants, the ILLINOIS DEPARTMENT OF CORRECTIONS (the "IDOC"), CHARLES TRUITT, JERMIAGH DALY, BRITNEY HARVEY, AMELIA ARINAGA, KENNETH NUSHARDT, MICHAEL BRID, PATRICK GAGLIARDO, ANTHONY GARANT, SHANE LIEBY, JEFFREY LOVETT, JOHN ANDERSON OROCK, and RAYMOND PAHL (cumulatively referred to as the "Individual Defendants"), by and through their counsel, KWAME RAOUL, Attorney General of the State of Illinois, hereby move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and states as follows:

**INTRODUCTION**

Plaintiff, as Administrator of the Estate of Michael Broadway, asserts various constitutional and statutory claims against IDOC and correctional employees based on allegations that Mr. Broadway's medical emergency and subsequent death resulted from unsafe conditions at Stateville Correctional Center and the purported

failure of IDOC staff to respond appropriately. However, many of Plaintiff's claims fail as a matter of law for multiple reasons. First, Plaintiff's constitutional claims under 42 U.S.C. § 1983 fail to establish the requisite personal involvement and culpable mental state of Jermiagh Daly, the chief engineer of Stateville. Second, Plaintiff's failure-to-intervene claims against Charles Truitt and Jermiagh Daly, along with the conspiracy claim against the Individual Defendants are inadequately pled and rely on conclusory allegations rather than specific factual support. Third, sovereign immunity bars Plaintiff's state law claims against IDOC and the Individual Defendants, as the allegations concern actions taken within the scope of their official duties. Lastly, Plaintiff's claim under the Americans with Disabilities Act ("ADA") is either moot or duplicative of her Rehabilitation Act claim. For these reasons, and as further explained below, Defendants respectfully request that this Court dismiss Plaintiff's Complaint in its entirety.

## Background

Plaintiff, Chunece Jones-Broadway (the "Plaintiff"), as Administrator to the Estate of Michael Broadway ("Broadway"), filed a Complaint on November 14, 2024 (the "Complaint"), naming the IDOC and staff members of the IDOC, the Individual Defendants who range from correctional officers, through the line of command and up to the warden at Stateville Correctional Center ("Stateville"). Plaintiff sues all the Individual Defendants in their individual capacity, while acting under the color of law within the scope of employment for each Individual Defendant.

(Compl., ECF No. 1.)

Plaintiff brings his claims against the IDOC and the Individual Defendants for events occurring on June 19, 2024, involving Mr. Broadway, a former individual in custody at Stateville, now deceased. *Id*.

Plaintiff alleges that Broadway's cause of death, "bronchial asthma", was exacerbated by the temperature on the fifth floor of Edward House at Statevillle, where Broadway was held in custody. *Id*. at ¶70.

Plaintiff brings Count IV against IDOC under 42 U.S.C. § 12101 – Americans with Disabilities Act; Count V under 29 U.S.C. § 701 – the Rehabilitation Act; Count VI under 740 ILCS 180/1 – Wrongful Death; and Count VII under 755 ILCS 5/27-6 – Survival Action. *Id*. ¶¶98-127.

Plaintiff further brings the following claims against the Individual Defendants of IDOC: Count I – Deliberate Indifference; Count II – Failure to Intervene; Count III – Conspiracy under 42 U.S.C. 1983 Eight Amendment; Count VI under 740 ILCS 180/1 – Wrongful Death; and Count VII under 755 ILCS 5/27-6 – Survival Action. *Id*. at ¶¶73-97, 115-127.

Plaintiff alleges that Charles Truitt, the warden of Stateville, and Jermiagh Daly were "aware of the acute health and safety risk" of the temperatures at Stateville but that Defendant Truitt and Defendant Daly took "no meaningful action to address it" *Id*. at ¶32.

Plaintiff alleges that Defendant Gagliardo, a correctional officer, was informed by a neighboring cell's occupant that he believed Broadway was "having an asthma attack". *Id*. at ¶45. Plaintiff also alleges that Defendant Gagliardo "knew that

3

complaints of respiratory distress require immediate medical attention" *Id*. at ¶47.

Plaintiff alleges that Defendant Gagliardo called Defendant Harvey, a lieutenant, informing her of Broadway's need for medical attention. *Id*. Plaintiff alleges that Defendant Harvey was "more concerned with routine prison administration […] than providing Michael with life-saving medical assistance". *Id*. at ¶48.

Plaintiff alleges that Defendant Gagliardo then joined with Defendant Orock, Defendant Garant, and Defendant Nushardt (all correctional officers) in an "officer only cell" nearby Broadway's cell. That they could "see broadway suffering and knew that immediate action was required [,,,]". *Id*. at ¶50.

Plaintiff alleges that Defendant Lovett saw Broadway "holding his neck and grasping for breath" and that Defendant Lovett called or walked down to Defendant Harvey and Defendant Arinaga (a correctional seargant). *Id*. at ¶56.

Plaintiff alleges that Defendants Harvey, Arinaga, Bird, Lieby, and Pahl were deliberately indifferent when an unnamed Jen Doe, allegedly a licensed practical nurse, administered naloxone to Broadway— "an outcome they knew was inevitable since they knew [Broadway's] emergency was not an overdose." *Id*. at ¶63.

## ARGUMENT

**A. Plaintiff's Count I against Jermiagh Daly – Deliberate Indifference (Eighth Amendment) -- should be dismissed against Because Plaintiff Fails to Plead Plausible Facts.**

Defendant Jermiagh Daly, the Chief Stationary Engineer at Stateville Correctional Center, respectfully moves this Court to dismiss Count I (Deliberate

4

Indifference under the Eighth Amendment) as to him, for failure to state a claim. The Complaint does not allege that Daly had direct, personal involvement in the alleged constitutional violation but instead relies on conclusory allegations about his general awareness of conditions at Stateville. The claim against him fails as a matter of law.

Plaintiff alleges that Daly was responsible for facility maintenance at Stateville and that he was aware of high temperatures in the prison (Complaint, ¶¶ 15, 32). However, the Complaint does not allege that Daly was responsible for prisoner housing assignments, medical care, or day-to-day correctional operations, like those allegations against the other Individual Defendants. These administrative responsibilities fall outside the scope of an Eighth Amendment deliberate indifference claim. See *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (mere awareness of a prison condition or medical issue does not establish a constitutional violation).

Further, Plaintiff does not allege that Daly personally encountered Michael Broadway, had any knowledge of his asthma, was aware of his medical distress on June 19, 2024, or was involved in any decision related to his care. Instead, Plaintiff relies on generalized assertions that Daly "regularly toured the quarterhouse" and "received reports about the conditions at Stateville" (Complaint, ¶ 32). These conclusory allegations do not satisfy the personal involvement requirement under § 1983. See *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("liability under § 1983 requires direct responsibility for the improper action" and that merely "being aware of a problem is not sufficient to establish personal liability"). Although the "an official satisfies the personal responsibility requirement of section 1983 . . . if the

5

conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent," there are no plausible allegations that a constitutional deprivation (meaning, deliberate indifference to a known substantial risk of serious injury) would arise to an inmate because of Daly's general awareness of heat conditions at Stateville or his role in facility maintenance alone. Mere knowledge that high or uncomfortable temperatures existed does not establish that Daly had the requisite subjective culpability under *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), nor does it demonstrate that he had the authority or duty to directly intervene in housing assignments or medical care decisions affecting Broadway. Plaintiff's claims against Daily must therefore be dismissed.

**B.     Plaintiff's Count II – Failure to Intervene Should be Dismissed Because Plaintiff Fails to Plead Sufficient Facts to State a Claim, and Vicarious Liability is inapplicable to § 1983 Claims.**

A failure to intervene claim must establish the following factual elements: (1) that defendant knew there was a constitutional violation (2) that defendants had the means to prevent it, and (3) that the defendant failed to do so. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017).

No Defendant can be liable under this theory of liability because it is, in essence, vicarious liability that section 1983 does not allow. Nevertheless, Defendant Truitt (warden) and Defendant Daly (engineer) also cannot be liable there are no plausible allegations that Defendants Truitt or Daly had a "realistic opportunity to intervene" in the alleged constitutional violations—because they are not even alleged to have been present in E-House on June 19, 2024, that would support their actual

6

knowledge that they "knew there was a constitutional violation." Although Plaintiff alleges the Defendants Truitt and Daly had knowledge of some conditions of E-House, those conditions, by themselves, were not the constitutional violation; rather, the violation was the alleged failure to obtain medical assistance to Plaintiff when he had difficulty breathing—something the Complaint does not allege Defendants Truitt or Daly had knowledge of. Accordingly, Plaintiff's failure-to-intervene claim fails against Truitt and Daly.

**C. Plaintiff's Count III—42 U.S.C. § 1983—Conspiracy (Eighth Amendment)—Should be Dismissed Against All IDOC Individual Defendants Because Plaintiff Fails to Plead Plausible Facts of a Conspiratorial Agreement.**

To state a cause of action of conspiracy Plaintiff must prove that there is "(1) an express or implied agreement among defendants to deprive plaintiff of his [...] constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement". See *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). Although a conspiracy is generally clandestine, mere speculation, conjecture, or conclusory allegations that Defendants 'must have' conspired do not suffice to survive a motion to dismiss. *Cf. Beaman v. Freesmeyer*, 776 F.3d 500, 511 (7th Cir. 2015) (in summary-judgment context, plaintiff must present sufficient circumstantial evidence that shows the defendants agreed to the unlawful conduct).

Plaintiff's attempt to include a conspiracy count in his Complaint is an attempt to create a nexus between the fact that Plaintiff was kept on the fifth floor of Edward House, and a conclusion unsupported by any specific facts, that he *must* have been kept on that floor and had his medical distress ignored in some malicious conspiracy

7

between all of IDOC's Individual Defendants. (Compl., ¶¶ 92-94). However, this is precisely the kind of speculative "acting in concert" pleading that does not support an agreement to conspire. Plaintiff Count III is supported only with conclusions that these Individual IDOC Defendants somehow reached an agreement amongst themselves in some expressed or implied agreement that they would purposely co-conspire and target Plaintiff to deprive him on his Constitutional rights. Plaintiff alleges no facts that even elude that such agreement existed. Plaintiff alleges no overt acts undertaken in furtherance of the alleged conspiracy that would distinguish coordinated action from mere parallel conduct. The fact that multiple correctional officers and medical staff were present during the events in question, and that Plaintiff believes they should have responded differently, does not amount to a conspiracy. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (in Sherman Act conspiracy context, complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made" and rejecting allegations of parallel conduct as insufficient to establish conspiracy).

Therefore, this Court should dismiss Count III for failure to plead plausible facts of a civil conspiracy.

**D.     Plaintiff's Count IV Under the American with Disabilities is Moot because Deceased Plaintiff Cannot Seek Injunctive Relief, and Compensatory Relief Would be Duplicative under that count.**

Title II of the Americans with Disabilities Act ("ADA") authorizes suits by private citizens for damages against public entities through abrogation of the Eleventh Amendment. *Estate of Morris v. Jeffreys*, No. 3:20-cv-50320, 2021 U.S. Dist.

LEXIS 140733, at *11 (N.D. Ill. July 28, 2021), citing *United States v. Georgia*, 546 U.S. 151, 154 (2006). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." *Id.* at 153 (quoting 42 U.S.C. § 12132). A qualified individual with a disability is a person "who, with or without reasonable modifications to rules, policies, or practices […] or transportation barriers […] meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* at 153-54. Title II's enforcement provision incorporates by reference § 505 of the Rehabilitation Act of 1973, 92 Stat 2982, as added, 29 U.S.C. § 794a [29 USCS § 794a], which authorizes private citizens to bring suits for money damages. 42 U.S.C. § 12133 [42 USCS § 12133]. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004).

Plaintiff alleges that Mr. Broadway had a disability—asthma—and that he was otherwise qualified to participate in services, benefits, and activities offered by the IDOC, including but not limited to medical services. (Compl., ECF No. 1 ¶ 103). Plaintiff further alleges that the IDOC was aware of Mr. Broadway's disability, and failed to reasonably accommodate and discriminated against him based on his disability. *Id.* ¶ 104, 106. Plaintiff alleges that Mr. Broadway requested accommodation for his disability when he allegedly requested a "low gallery permit" to ensure that he'd be on a low floor within the cellhouse. *Id.* ¶ 38.

Despite Plaintiff's allegations, this Court lacks subject matter jurisdiction over

9

Count IV – specific to the American with Disabilities Act. Several federal district courts have held that the representative of a decedent's estate may not bring a claim under the American with Disabilities Act because "the ADA is limited to injunctive relief, but that such relief is moot for a decedent's estate." *Perkins ex rel. Estate of Perkins v. Donahoe*, No. 13 C 5226, 2014 U.S. Dist. LEXIS 106118, at *6 (N.D. Ill. Aug. 4, 2014). Plaintiff in this case is deceased, resulting in the filing of this suit. Therefore, Plaintiff may not seek injunctive relief. Even if this court deems that compensatory damages are warranted, Count IV would be duplicative with respect to these forms of damages because Plaintiff's Complaint alleges Count V under the Rehabilitation Act against IDOC.

### E. Plaintiff's Count VI—Wrongful Death—Should be Dismissed Against IDOC and IDOC's Individual Defendants Under the Doctrine of Sovereign Immunity and Qualified Immunity.

Plaintiff alleges Count VI as a state law claim for Wrongful Death against all Defendants. This Court lacks subject matter jurisdiction over state law claims against IDOC since these claims are barred by the doctrine of sovereign immunity. Though the doctrine of sovereign immunity is a creature of state law, "state rules of immunity are biding in federal court with respect to state causes of action". *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003). Here, both the IDOC and Individual Defendants are immune from Plaintiff's wrongful death and survival claims under State law.

The 1970 Illinois Constitution provides that sovereign immunity is abolished "[e]xcept as the General Assembly may provide by law." Ill. Const., art. XIII, § 4. HN5

The Illinois General Assembly restored sovereign immunity through the State Lawsuit Immunity Act, which provides that "the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1. The Illinois Court of Claims has exclusive jurisdiction over "[a]ll claims against the State founded upon any law of the State of Illinois." 705 Ill. Comp. Stat. 505/8(a). The prohibition "against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." *Sass v. Kramer*, 381 N.E.2d 975, 977 (Ill. 1978). "Whether an action is in fact one against the State, and hence one that must be brought in the Court of Claims, depends . . . on the issues involved and the relief sought," such that "substance takes precedence over form." *T.S. v. Cty. of Cook*, 67 F.4th 884, 891 (7th Cir. 2023).

Here, Plaintiff brings a claim of wrongful death and a "survival action" against the IDOC and the Individual Defendants. To determine if these claims are against the State, the Court must determine whether any of the Illinois Supreme Court's *Healy v. Vaupel* conditions are satisfied:

> "[T]here are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State."

*Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990.) Plaintiff's Complaint does not satisfy any of these elements to sovereign immunity.

*Scope of Authority.* As to the first element, Courts look to whether "the

11

employee intended to perform some function within the scope of his or her authority when committing the legal wrong." *Jackson v. Alverez*, 831 N.E.2d 1159, 1164 (Ill. App. Ct. 2005). Nowhere in Plaintiff's Complaint does she allege that the Defendants acted outside their official roles or making decisions outside the scope of their employment responsibilities. Nothing in the Complaint suggests that they acted for purely personal reasons or in a manner that exceeded their authority as state employees. Their actions, even if alleged to be wrongful, were undertaken in furtherance of their employment duties and are thus do not meet this exception to sovereign immunity.

*Source of Duty*. Second, Plaintiff's allegation that the Individual Defendants and IDOC were "negligently ignoring Michael's requests for medical attention"[1] does not satisfy the second prong of the source of the Defendants' duty. Where the alleged wrongful conduct "arose out of the State employee's breach of a duty that is imposed on him solely by virtue of his State employment," sovereign immunity bars the action. *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992). But "where the employee is charged with breaching a duty imposed on him independently of his state employment, sovereign immunity will not attach." *Jinkins v. Lee*, 807 N.E.2d 411, 420 (Ill. 2004). "In other words, where an employee of the State, although acting within the scope of his employment, is charged with breaching a duty that arose independently of his State employment, a suit against him will not be shielded by sovereign immunity." *Currie*, 592 N.E.2d at 980.

---

[1] (Compl., ¶ 116.)

12

Here, the source of the alleged duty that Defendants owed to prisoners (including Mr. Broadway) stemmed solely from their roles as correctional employees at Stateville Correctional Center. As the Court of Appeals held in *T.S. v. County of Cook*, where juvenile detainees alleged that a superintendent violated a duty of care to them, "[the state employee] would owe no duty to the detainees outside of the detention-center context." *T.S. v. County of Cook*, 67 F.4th 884, 893 (7th Cir. 2023). Similarly, the alleged violation of the duty of care by Defendants arises solely from their failure to comply with their work obligations, not from any duty owed to the general public.

Indeed, Plaintiff alleges precisely that: "Defendants breached the duty of care owed to prisoners in their custody." (Compl., ¶¶ 116, 122.) Defendants did not owe a duty to Mr. Broadway independently of their employment with the State of Illinois, as members of the public owe no such duty to him. The source of the Individual Defendants' duty to Mr. Broadway was derived exclusively from their employment with the State and their responsibilities concerning conditions of confinement and medical care.

*Official Functions*. The third element asks whether the breach involved matters "ordinarily within . . . the normal and official functions" of correctional employees at a State correctional facility. *T.S.*, 67 F.4th at 893. The Court of Appeals and the Illinois Appellate Court have observed that this third element "overlap[s] to some extent" with the first. *Id.* (citing *Jackson v. Alverez*, 831 N.E.2d 1159, 1164 (Ill. App. Ct. 2005)).

13

Here, the correctional Individual Defendants' alleged actions pertained precisely to their official functions: the routine management and operation of Stateville Correctional Center, encompassing facility oversight, inmate housing assignments, security protocols, and overall prison administration. These responsibilities are fundamental to the roles of prison officials and fall well within their normal and official duties. Specifically, as warden, Defendant Truitt is alleged to be responsible for the overall conditions of confinement at Stateville, including housing allocation and facility maintenance, while Defendant Daly, as chief engineer, is alleged to have managed ventilation, cooling systems, and other structural concerns. Likewise, the correctional officers and medical staff Defendants were charged with supervising incarcerated individuals, addressing medical needs, and exercising discretion in providing care—each of which constitutes an essential function of their official duties.

Plaintiffs assert that Defendants demonstrated willful and wanton conduct (a form of negligence) by failing to address excessive heat and by inadequately responding to Mr. Broadway's medical emergency. However, the appropriateness of Defendants' actions or decisions does not negate the fact that their conduct was undertaken in furtherance of their official responsibilities. An employee's intent or subjective reasoning is irrelevant to determining whether their actions fell within the scope of their official duties. *Jackson v. Alverez*, 831 N.E.2d 1159, 1164 (Ill. App. Ct. 2005). Rather, the inquiry focuses on whether the employee's actions were connected to their designated functions. Here, Defendants' decisions regarding inmate housing,

14

facility conditions, and emergency response were directly tied to their roles as correctional employees. Because Plaintiffs' claims arise from actions taken in the course of these official duties, they are barred by sovereign immunity.

**F.     All IDOC Defendants Should Be Dismissed under Plaintiff's Count VII–State Law Claim, Survival Action—Because it is not a Claim Upon which Relief Can be Sought.**

Plaintiff brings Count VII as a Survival Action Claim under 755 ILCS § 5/27-6, commonly referred to as the Illinois Survival Act. (Compl., ¶127.) In addition to this count being barred by the Eleventh Amendment and sovereign immunity, it is not a cause of action at all, but rather a vehicle through which to bring a claim that has survived the decedent.

In other words, although it is a statute under Illinois State Law, it is not a claim, rather, a mechanism of law for Plaintiff's to recover on behalf of a decedent. The Illinois Supreme Court established that "[t]he Survival Act does not create a statutory cause of action [but] merely allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before [s]he died." *Wilson v. Perez*, No. 22-cv-03609, 2023 U.S. Dist. LEXIS 69149, at *3-4 (N.D. Ill. Apr. 20, 2023) (internal citation omitted). Claims brought pursuant to the Survival Act are different from Wrongful Death claims, which allow a plaintiff to recover for injuries she herself faced because of the decedent's death. *Id.*, citing *Ocasio v. Vill. of N. Aurora*, No. 20 cv 4908, 2022 U.S. Dist. LEXIS 196536, at *3 (N.D. Ill. Oct. 28, 2022) (Tharp, J.) (distinguishing between Survival Act and Wrongful Death Act claims).

15

Therefore, Plaintiff's Count VII should be dismissed in favor of all IDOC Defendants, because it is not a claim upon which relief can be sought.

## Conclusion

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss and dismiss Plaintiff's Complaint in its entirety with prejudice. Plaintiff's allegations, even if well-pleaded ones taken as true, fail to state claims upon which relief can be granted under federal or Illinois law. The constitutional claims against lack the necessary factual support to establish liability under § 1983, and Plaintiff's state law claims are barred by the doctrine of sovereign immunity. Further, Plaintiff's ADA claim is moot and duplicative of the Rehabilitation Act claim. Because amendment would not cure these specific deficiencies in Plaintiff's claims, dismissal with prejudice as to those claims is appropriate.

Date: February 7, 2025

Respectfully Submitted,

KWAME RAOUL
Attorney General of Illinois

/s/ *Ravi Mehta*
RAVI MEHTA (ARDC 6331441)
*Assistant Attorney General*
OFFICE OF THE ILLINOIS ATTORNEY GENERAL
115 S. LASALLE STREET
CHICAGO, ILLINOIS 60603
(773) 550-7343
RAVI.MEHTA@ILAG.GOV