**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| CHUNECE JONES-BROADWAY, as ) <br> Administrator of the Estate of Michael Broadway, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ILLINOIS DEPARTMENT OF CORRECTIONS, ) <br> *et al.*, ) <br> ) <br> Defendants. ) | Case No. 1:24−cv−11700 <br><br> The Hon. Andrea R. Wood |

**PLAINTIFF'S RESPONSE TO THE IDOC
DEFENDANTS' PARTIAL MOTION TO DISMISS**

Plaintiff Chunece Jones-Broadway, as Administrator of the Estate of Michael Broadway, by and through her undersigned attorneys at Kaplan & Grady LLC, hereby responds to the IDOC Defendants'[1] Partial Motion to Dismiss (Dkt. No. 52), stating as follows:

**INTRODUCTION**

On June 19, 2024, Michael Broadway died from an asthma attack brought on by the oppressive heat in his cellhouse at Stateville Correctional Center. Stateville's warden and its chief engineer were aware of the extremely high temperatures in Michael's cell, and the mortal dangers they posed, yet did nothing to address the problem. When Michael started suffering an asthma attack, multiple correctional officers knew that Michael needed emergency medical attention, but they did not take any meaningful action to make sure he received lifesaving care. The warden, the chief engineer, and the officers who ignored Michael's asthma attack all disregarded a substantial risk to Michael's health and safety, causing his preventable and untimely death.

---

[1] For the purposes of this Response, "IDOC Defendants" means all Defendants who moved for dismissal in Dkt. No. 52: the Illinois Department of Corrections ("IDOC"), Charles Truitt, Jermiagh Daly, Britney Harvey, Amelia Arinaga, Kenneth Nushardt, Michael Bird, Patrick Gagliardo, Anthony Garant, Shane Leiby, Jeffrey Lovett, John Anderson Orock, and Raymond Pahl.

Plaintiff Chunece Jones-Broadway, Michael's wife and Administrator of his Estate, has sued the Illinois Department of Corrections ("IDOC") and its employees ("the individual IDOC Defendants"), among others, for violating her husband's constitutional and statutory rights. Plaintiff asserts deliberate indifference, failure to intervene, and conspiracy claims (Counts I, II, and III), as well as state law Wrongful Death and Survival Act claims (Counts VI and VII), against each of the individual IDOC Defendants. Plaintiff asserts violations of Michael's statutory rights under the Americans with Disabilities Act and Rehabilitation Act (Counts IV and V) against IDOC. The IDOC Defendants have moved to dismiss several of these claims. For the reasons set forth below, each of their arguments are unsound and their motion should be denied.

## SUMMARY OF FACTUAL ALLEGATIONS

At all relevant times, Michael Broadway was in the custody of the IDOC at Stateville Correctional Center, a notoriously old and dilapidated prison. Dkt. No. 1 (Compl.) ¶¶ 13, 26. When Michael died in June 2024, Stateville had no air conditioning, the fans in front of his cell were padlocked and turned off, and the windows on his gallery were nailed shut. *Id.* ¶ 39.

Defendant Charles Truitt, the warden of Stateville, and Defendant Jermiagh Daly, the prison's chief engineer, oversaw Stateville's facilities, received reports about the conditions at Stateville, including temperature readings, and regularly toured the prison, including Michael's cellhouse, giving them both knowledge of and responsibility for the conditions at Stateville and the health and safety of the people incarcerated there. *Id.* ¶¶ 14-15, 32. They both personally observed the dangerously high temperatures at Stateville, particularly during the summer months and in the upper galleries. *Id.* ¶¶ 31-32, 35. In fact, Defendant Truitt toured Michael's gallery soon before his death and was told directly about the excessive heat and the state of the fans and windows. *Id.* ¶ 41. Neither Defendant Truitt nor Defendant Daly took any meaningful action to ensure that the windows were opened, that the fans were turned on, or to otherwise address the extreme heat. *Id.* ¶¶ 4, 41.

2

Michael suffered from severe asthma since childhood, which was triggered by high temperatures and humidity. *Id.* ¶ 37. His asthma was well documented in his medical records and known by IDOC staff. *Id.* ¶¶ 37-38. When Michael moved into his cellhouse at Stateville, he informed IDOC officials that he needed to be on a low gallery because of his severe asthma. *Id.* ¶ 38. However, IDOC denied his request and assigned him to a cell on the fifth floor—the highest and hottest gallery in the cellhouse. *Id.*

On June 19, 2024, outdoor temperatures reached nearly 100 degrees, and indoor temperatures at Stateville were significantly hotter. *Id.* ¶¶ 42-43. While locked inside his cell on the fifth floor, Michael began struggling to breathe. *Id.* ¶¶ 42, 44. As he gasped for breath, Michael's friends yelled and pleaded for the surrounding officers to help him. *Id.* ¶ 45. Multiple correctional officers—Defendants Patrick Gagliardo, Michael Bird, Anthony Garant, Shane Leiby, Jeffery Lovett, John Anderson Orock, Britney Harvey, Amelia Arinaga, Kenneth Nushardt, and Raymond Pahl—were aware of Michael's urgent medical need yet took no meaningful action to save his life. *Id.* ¶¶ 47-51, 55-56, 63-64. They did not even call a Code 3—a code that officers are required to call over the radio when a prisoner is experiencing a medical emergency. *Id.* Nearly an hour after Michael first called for help, he was finally transported by ambulance to St. Joseph's Hospital, where he was declared dead. *Id.* ¶ 69. The Will County Coroner's Office determined that Michael's cause of death was "bronchial asthma," and that heat stress was a "significant contributing condition." *Id.* ¶ 70.

## LEGAL STANDARD

"The cornerstone at the motion to dismiss stage remains for district courts to treat all allegations as true and to draw all reasonable inferences in the plaintiff's favor." *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022) (citing *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007)). Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper only where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 558 (2007). Federal pleading standards demand "only a plausible short and plain statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018). The complaint must merely "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## ARGUMENT

### I. Plaintiff Has Adequately Pled An Eighth Amendment Deliberate Indifference Claim Against Defendant Jermiagh Daly (Count I)

The IDOC Defendants seek dismissal of Count I as to Defendant Daly, contending that Plaintiff has failed to allege that Daly had "direct, personal involvement in the alleged constitutional violation." Dkt. No. 52 at 5. Defendants' argument lacks merit.

To sufficiently plead an Eight Amendment claim, Plaintiff must allege that (1) Michael was "incarcerated under conditions posing substantial risk of serious harm" and (2) the defendant "acted with 'deliberate indifference' to [Michael's] health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Defendants rightly do not dispute the first prong: that Michael was exposed to an objectively serious risk of harm due to dangerous conditions at Stateville that resulted in extreme temperatures in his cellhouse. *See Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018).

To show deliberate indifference, Plaintiff must allege that Defendant Daly knew Michael "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Plaintiff must show that Daly had "*actual* knowledge of the risk." *Washington v. LaPorte Cty. Sheriff's Dep't*, 306 F.3d 515, 518 (7th Cir. 2002). This "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."

4

*Farmer*, 511 U.S. at 842. That is, "[i]f 'the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.'" *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001) (quoting *Farmer*, 511 U.S. at 842-43); *see also Washington*, 306 F.3d at 519 ("Under some circumstances, a risk might be so obvious that actual knowledge on the part of prison officials may be inferred.").

There is little question that Defendant Daly had actual knowledge of the substantial risk of harm to Michael posed by the dangerous conditions at Stateville. Plaintiff alleges that as Stateville's chief engineer, Defendant Daly was responsible for the facilities and regularly toured the prison and monitored temperature readings. Plaintiff alleges that Defendant Daly knew that the windows were nailed shut and the fans were padlocked in Michael's cellhouse. Plaintiff further alleges that Defendant Daly thus was specifically aware of the excessive heat and dangerous conditions at Stateville, particularly in the upper galleries where Michael was celled. *See Haywood v. Hathaway*, 842 F.3d 1026, 1032-33 (7th Cir. 2016) (reversing summary judgment to warden who "had actual knowledge of the unusually harsh weather conditions, that he had been apprised of the specific problem with the physical condition of Haywood's cell (i.e., the windows would not shut), and that, during the time period of Haywood's complaint, the warden toured the segregation unit himself"). The obviousness of the risk posed by the dangerously high temperatures at Stateville is itself enough to infer Defendant Daly's knowledge. *See Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) ("Even if [the plaintiff] had never filed the grievance, a jury could infer that the warden was aware of the pest infestations in [Stateville]."); *Smith v. Godinez*, No. 14 C 6744, 2023 WL 358792, at *11 (N.D. Ill. Jan. 23, 2023) (denying summary judgment for Stateville's Assistant Warden of Operations because a jury could "reasonably infer[] that [the defendant] had knowledge of the infestation problem based on its obvious scope and severity.").

5

Defendants argue that Plaintiff's allegations do not establish personal involvement because Plaintiff does not allege that Defendant Daly met Michael, that Daly was involved in his care, or that Daly was aware of Michael's asthma or his medical distress on the day he died. Dkt. No. 52 at 5. But a person can be liable for deliberate indifference if he is aware of a known risk to the plaintiff *or* anyone similarly situated. *See Farmer*, 511 U.S. at 844 ("[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."); *Brown v. Budz*, 398 F.3d 904, 915 (7th Cir. 2005) (citing *Farmer* and reiterating that an official can be deliberately indifferent to a risk of harm to a class of prisoners without knowledge of the identity of the "ultimate victim"). Defendant Daly is not shielded from liability because he may not have met Michael or known of his particular needs.

In addition to alleging Defendant Daly's knowledge of the risk, Plaintiff alleges that Defendant Daly took no meaningful action to respond to it. "Knowingly persisting in an approach that does not make a dent in the problem is evidence from which a jury could infer deliberate indifference." *Gray*, 826 F.3d at 1009; *see also Haywood*, 842 F.3d at 1031 (warden's inappropriate response to plaintiff's "grievance, to the extreme weather, and to the situation in the segregation unit allow the inference that he was deliberately indifferent to the extreme cold suffered by Haywood and the other prisoners"); *Brown v. Budz*, 398 F.3d 904, 913-16 (7th Cir. 2005) (reversing dismissal of Eighth Amendment claim where defendant was alleged to have disregarded an excessive risk to plaintiff); *Ball v. LeBlanc*, 792 F.3d 584, 596 (5th Cir. 2015) ("[W]e affirm the district court's conclusion that housing these prisoners in very hot cells without sufficient access to heat-relief measures, while knowing that each suffers from conditions that render him extremely vulnerable to serious heat-related injury, violates the Eighth Amendment.").

6

Defendants' reliance on *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009) is misplaced.[2] Dkt. No. 52 at 5. True, mere awareness of a problem does not establish a constitutional violation. As *Burks* makes clear, the key to constitutional liability is awareness *plus* responsibility to address the problem. *See id.* at 596 (holding that a complaint examiner could not be liable because "she carried out her job exactly as she was supposed to"). Here, Plaintiff alleged the requisite responsibility. Defendant Daly was the chief engineer at Stateville who was responsible for the creation, implementation, oversight, and supervision of measures to improve Stateville conditions and protect people incarcerated at Stateville from harm caused by those conditions. Dkt. No. 1 ¶ 78. He was not only aware of the unrelenting heat at Stateville, but he had the responsibility to do something to fix it, and he did nothing. This is textbook deliberate indifference.

## II. Plaintiff Has Adequately Pled Failure To Intervene Claims Against All Individual IDOC Defendants (Count II)

The IDOC Defendants seek dismissal of Plaintiff's failure to intervene claim, contending that (1) no Defendant can be liable under this theory because vicarious liability is inapplicable to Section 1983 claims and (2) Plaintiff has failed to state a claim against Defendants Truit and Daly. Dkt. No. 52 at 6-7. Neither of Defendants' arguments hold water.

Defendants assert without any citation to authority that "[n]o Defendant can be liable under this theory of liability because it is, in essence, vicarious liability that section 1983 does not allow." *Id.* at 6. As an initial matter, this conclusory, underdeveloped argument must be waived. *See United Cent. Bank v. Davenport Est. L.L.C.*, 815 F.3d 315, 318 (7th Cir. 2016) (rejecting undeveloped argument as waived); *Kramer v. Banc of Am. Sec., L.L.C.*, 355 F.3d 961, 964 n.1 (7th Cir. 2004) (rejecting one-sentence

---

[2] In addition to *Burks*, Defendants rely on *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) for the proposition that awareness alone does not establish a constitutional violation. Dkt. No. 52 at 5. This appears to be in error, as the case does not contain the quote cited in Defendants' motion. Regardless, the case is inapposite: it concerns a prisoner's access to the courts, not deliberate indifference, and is at the summary judgment stage, rather than pleading. *Gentry*, 65 F.3d at 561. Not only did the plaintiff's allegations survive a motion to dismiss, but the Seventh Circuit vacated the district court's grant of summary judgment. *Id.*

7

argument unsupported by pertinent authority as waived); *Lee v. Chicago Youth Centers*, 69 F. Supp. 3d 885, 889 (N.D. Ill. 2014) (collecting cases for the proposition that "undeveloped, unsupported, perfunctory, or skeletal arguments" are waived). Furthermore, Defendants are simply wrong as it is well established that failure to intervene claims are cognizable. *See, e.g., Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009); *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005).

To state a failure to intervene claim under Section 1983, a plaintiff must allege that a constitutional violation was committed by a state actor and the defendant had a "realistic opportunity to intervene to prevent the harm from occurring," but failed to do so. *Piercy v. Whiteside Cnty., Ill.*, No. 14 CV 7398, 2016 WL 1719802, at *7 (N.D. Ill. Apr. 29, 2016) (quoting *Abdullahi v. City of Madison*, 423 F.3d 763, 744 (7th Cir. 2005)).

As explained above, Defendant Daly violated Michael's rights through deliberate indifference to the substantial risk of harm posed by the excessive heat at Stateville and the conditions in the upper gallery. The allegations against Defendant Truitt—which Defendants do not assert failed to state a claim—are substantially similar. Plaintiff's allegations allow for the reasonable inference that Defendant Truitt and Defendant Daly failed to intervene in each other's violations of Michael's rights.

Defendants argue that Defendants Truitt and Daly could not have had a realistic opportunity to intervene to prevent the constitutional violation because they were not present in Michael's cellhouse on the day that he died. Dkt. No. 52 at 6-7. However, the constitutional violations perpetrated by these Defendants was not "the alleged failure to obtain medical assistance to Plaintiff when he had difficulty breathing," as Defendants state. *Id.* at 7. Rather, it was their failure to address the substantial risk of harm when they became aware of the excessive heat and lack of ventilation in Stateville in the summer of 2024. It is certainly reasonable to infer that each Defendant had the realistic opportunity not only to prevent his own unconstitutional conduct but also to prevent the unlawful conduct of the other. *See Sanchez v. City of Chicago*, 700 F.3d 919, 925-26 (7th Cir. 2012) (in a section

1983 action, "a defendant police officer may be held to account both for his own use of excessive force on the plaintiff, as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers"); *Smith v. Burge*, 222 F. Supp. 3d 669, 686 (N.D. Ill. 2016) (finding that plaintiff had sufficiently stated claims against the defendants for physically coercing him, fabricating his false confession, and withholding and suppressing exculpatory evidence as well as a claim against them for failing to intervene to stop each other's misconduct).

### III. Plaintiff Has Adequately Pled Conspiracy Claims Against All Individual IDOC Defendants (Count III)

The IDOC Defendants seek dismissal of Count III, contending that Plaintiff has failed to allege any facts supporting a conspiratorial agreement. Dkt. No. 52 at 7-8. Defendants' argument misses the mark.

Section 1983 imposes liability for civil conspiracy when "two or more persons act[] in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). There is no heightened pleading standard for conspiracy claims. *Senalan v. Curran*, 78 F. Supp. 3d 905, 914 (N.D. Ill. 2015); *Sánchez v. Village of Wheeling*, 447 F. Supp. 3d 693, 705 (N.D. Ill. 2014). The Seventh Circuit has held that "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *see also Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006); *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Thompson v. Cook Cnty.*, No. 22 C 1938, 2023 WL 2838449, at *4 (N.D. Ill. Apr. 7, 2023). The lenient pleading requirements appropriately reflect the impossibility of knowing the particularities of an agreement others have reached to deprive a person of their rights. *See Quinones v. Szorc*, 771 F.2d 289, 290-91 (7th Cir. 1985) ("The very nature of a conspiracy obscures most, if not all, information about the alleged conspirator's agreement."). Further, because direct evidence is rarely available, a plaintiff typically must rely on common sense and circumstantial evidence to plead and prove their conspiracy

9

claims. *Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1057 (N.D. Ill. 2016); *Williams v. Brown*, 269 F. Supp. 2d 987, 995 (N.D. Ill. 2003).

Plaintiff's allegations satisfy the pleading requirements and provide sufficient notice to Defendants of the contours of her conspiracy claim. As to Defendants Britney Harvey, Amelia Arinaga, Kenneth Nushardt, Michael Bird, Patrick Gagliardo, Anthony Garant, Shane Leiby, Jeffrey Lovett, John Anderson Orock, and Raymond Pahl, Plaintiff has alleged the parties involved in the conspiracy (all individual IDOC Defendants), the general purpose of the conspiracy (to deprive Michael of his constitutional rights by failing to provide him with proper medical care or access to medical care), and the date of the conspiracy (June 19, 2024). As for Defendants Truitt and Daly, Plaintiff has alleged the parties involved in the conspiracy (Truitt and Daly), the general purpose of the conspiracy (to deprive Michael and similarly situated prisoners of their constitutional rights by failing to take action in response to the extreme temperatures in Stateville), and the date of the conspiracy (during the spring and summer of 2024). "[N]o greater specificity is required to survive a motion to dismiss." *Sánchez*, 447 F. Supp. 3d at 705 (citing *Hoskins*, 320 F.3d at 764); *see also Harris v. Kruger*, No. 13-cv-8584, 2015 WL 4971888, at *4 (N.D. Ill. Aug. 19, 2015) (denying defendants' motion to dismiss plaintiff's conspiracy claim where plaintiff "provided the parties (Defendant Officers) the purpose of the conspiracy (to have Harris drop his claims against the ATF) and the approximate date of the conspiracy (between the filing of the administrative claim and the 2013 incidents)"); *Chatman v. City of Chi.*, No. 14 C 2945, 2015 WL 1090965, at *8 (N.D. Ill. Mar. 10, 2015) (denying defendants' motion to dismiss plaintiff's conspiracy claim where plaintiff identified the parties to the conspiracy, the approximate time period each defendant participated in the conspiracy, and the general purpose of the conspiracy which was "to frame Plaintiff for a crime he did not commit and thereby deprive him of his constitutional rights").

IV. **Plaintiff Properly Seeks Compensatory Damages Under The ADA (Count IV)**

The IDOC Defendants seek dismissal of Plaintiff's ADA claim on the ground that the ADA is limited to injunctive relief, which is unavailable to Plaintiff. Dkt. No. 52 at 10. That is plainly incorrect. Compensatory damages are available under the ADA. *See McDaniel v. Syed*, 115 F.4th 805, 823 (7th Cir. 2024) (explaining the standard to win compensatory damages under the ADA); *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022) (same); *Carter v. City of Chi.*, 520 F. Supp. 3d 1024, 1033 (N.D. Ill. 2021) (same); *Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 917 (N.D. Ill. 2009) (same). Defendants' singular citation to dicta in an unpublished case does nothing to controvert that well-established law.

In a similarly weak argument, Defendants contend that the ADA claim should be dismissed because the damages would be "duplicative" of the Rehabilitation Act claim. Dkt. No. 52 at 10. First, Defendants have waived their argument by raising it in a single sentence and without any authority. *See United Cent. Bank*, 815 F.3d at 318; *BNSF Ry. Co. v. Town of Cicero, Ill.*, 592 F. Supp. 3d 716, 735 (N.D. Ill. 2022). Second, the fact that the relief available to Plaintiff under the ADA and the Rehabilitation Act is coextensive is no reason to dismiss the ADA claim. Courts in this Circuit have frequently rejected that course of action. *See, e.g.*, *Cesca v. W. Ill. Univ. Bd. of Trustees*, 716 F. Supp. 3d 696, 713 (C.D. Ill. 2024) ("At this early stage, the Court declines to dismiss the ADA claims as legally duplicative of the Rehabilitation Act claims."); *Garner-Jones v. Carter*, No. 1:21-cv-02928-JMS-DLP, 2022 WL 2317447, at *4 (S.D. Ind. June 28, 2022) (same); *Juech v. Children's Hosp. & Health Sys., Inc.*, 353 F. Supp. 3d 772, 779 (E.D. Wis. 2018) ("Any concern that the pursuit of similar claims might lead to impermissible duplicative recoveries may be addressed before trial or through appropriate jury instructions."). ADA and Rehabilitation Act claims often proceed together through the end of a case, and Defendants have offered no legal or even practical reason why that should not happen here. *See McDaniel*, 115 F.4th at 835 (reversing district court's entry of summary judgment on ADA and

Rehabilitation Act claims); *Lange v. City of Oconto*, 28 F.4th 825, 830 (7th Cir. 2022) (noting that the jury returned a verdict for the defendants on the ADA and Rehabilitation Act claims).

V. **Sovereign Immunity Does Not Bar Plaintiff's State Law Claims Against The IDOC Defendants (Counts VI and VII)**

The IDOC Defendants contend that Plaintiff's state law Wrongful Death and Survival Act claims are barred by state-law sovereign immunity.[3] Dkt. No. 52 at 10-15. Defendants' contention must be rejected for two reasons.

First, the Illinois State Lawsuit Immunity Act protects the State against being "made a defendant or party in any court." 745 ILCS 505/1. Notwithstanding the "immunity" label, however, the Act does not actually bar claims against the State. It provides only that such actions "must be brought in the [Illinois] Court of Claims." *T.S. v. County of Cook*, 67 F.4th 884, 891 (7th Cir. 2023) (quoting *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990)); *see also* Court of Claims Act, 705 ILCS 505/8(a) (The Illinois Court of Claims has exclusive jurisdiction over "[a]ll claims against the State founded upon any law of the State of Illinois."). Applying the factors set forth in *Healy*, 549 N.E.2d at 1247, Defendants argue that Plaintiff's claims are considered "claims against the State." Dkt. No. 52 at 10-15. Plaintiff takes no issue with Defendants' application of *Healy* and their determination that the claims against the IDOC Defendants are properly considered against the State. If this case were in Illinois state court, then Plaintiff agrees that the claims would need to be litigated in the Illinois Court of Claims. However, this case is not in state court. Here, in federal court, Illinois state law may not dictate this Court's jurisdiction over a valid claim.

---

[3] Defendants' heading purports to move to dismiss Count VI (the wrongful death claim) under the distinct doctrines of sovereign immunity and qualified immunity. Because qualified immunity is not addressed outside of the heading, and thus Defendants make no argument as to why qualified immunity applies, the argument is waived and Plaintiff need not respond. *See BNSF*, 592 F. Supp. 3d at 735 (holding defendant's one-sentence argument in motion to dismiss was waived for failure to develop it or cite pertinent authority).

As the Seventh Circuit has held, "apart from invoking their rights under the eleventh amendment, states cannot insist that any particular category of litigation be conducted only in state court." *Rodriguez v. Cook County*, 664 F.3d 627, 632 (7th Cir. 2011). Under *Rodriguez*, Illinois is free to channel state court litigation against its officers into a particular forum but cannot preclude those same claims from being heard in *federal* court. *Id.* ("Congress, not the states, determines the jurisdictional authority of the federal courts."); *Fields v. Wharrie*, 672 F.3d 505, 518 (7th Cir. 2012) ("[A] state employee's sovereign-immunity defense does not impact a federal court's jurisdiction over a case."). District courts have relied on *Rodriguez* and *Fields* to hold, in cases similar to this one, that state-law sovereign immunity does not limit federal subject-matter jurisdiction. *See, e.g.*, *Atkins v. Hasan*, No. 15 CV 203, 2015 WL 3862724, at *8 (N.D. Ill. June 22, 2015); *Murphy v. Smith*, 12-cv-0841-SCW, 2015 WL 13236221, at *8 (S.D. Ill. Sept. 25, 2015); *Woods v. Cook Cnty., Ill.*, No. 13 C 2607, 2014 WL 340422, at *4 (N.D. Ill. Jan. 30, 2014).

Second, the illegal-acts exception to the state-law sovereign immunity doctrine provides another reason why Defendants' argument should be rejected. "If the plaintiff alleges that state officials or employees violated 'statutory or constitutional law,' 'sovereign immunity affords no protection.'" *Murphy v. Smith*, 844 F.3d 653, 660 (7th Cir. 2016) (quoting *Healy*, 549 N.E.2d at 1247); *see also Leetaru v. Bd. of Trs. of the Univ. of Ill.*, 2015 IL 117485, ¶¶ 45-46 ("[W]hen a state officer performs illegally or purports to act under an unconstitutional act or under authority which he does not have, the officer's conduct is not regarded as the conduct of the State."). Plaintiff's allegations are sufficient to establish that the IDOC Defendants' conduct was illegal under the Constitution and state tort law and thus the Defendants are not protected by state-law sovereign immunity. *See Murphy*, 844 F.3d at 660 (finding that Illinois state-law sovereign immunity did not bar the plaintiff's state law battery damages claims against state officers).

Defendants rely on *T.S.*, 67 F.4th at 894-95, in which a panel of the Seventh Circuit declined to recognize the illegal-acts exception in a personal capacity action for damages and instead applied the *Healy* factors to determine immunity. This contradicted *Murphy*, yet the panel in *T.S.* did not point to any intervening state law decisions to support this different result. The panel simply offered a different interpretation of *Healy* and *Leetaru*, which the *Murphy* court also discussed at length. Circuit Rule 40(e) provides a mechanism for a panel to overrule circuit precedent by circulating its draft opinion to the full court before publication. Yet the *T.S.* court did not circulate the opinion to the full court or even purport to overrule *Murphy*. *Compare Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1013 (7th Cir. 2020). Particularly where there has been no identifiable change in the controlling law, lower courts should not disregard earlier binding precedent where a subsequent panel reaches a different conclusion. *See DeCalonne v. G.I. Consultants, Inc.*, 197 F. Supp. 2d 1126, 1134 (N.D. Ind. 2002) (following an earlier Seventh Circuit decision because "[o]verruling requires recognition of the decision to be undone and circulation to the full court under Circuit Rule 40(e)"). Further, the *T.S.* court did not even address, let alone purport to overrule, the Court's precedent in *Rodriguez* or *Fields* establishing that state-law immunity does not impact a federal court's jurisdiction over state law claims.

Accordingly, Plaintiff's state law claims should not be barred by sovereign immunity.

## VI. Plaintiff Has Adequately Pled Survival Action Claims Against All IDOC Defendants (Count VII)

Finally, Defendants argue that Plaintiff's Survival Action claim should be dismissed because "it is not a cause of action at all, but rather a vehicle through which to bring a claim that has survived the decedent." Dkt. No. 52 at 15. It is true that Illinois Survival Act claims depend on an underlying cause of action. *See* 755 ILCS 5/27-6. The Act "allows for the recovery of damages for injury sustained by the deceased up to the time of death, and preserves the causes of action on behalf of decedents that would otherwise be rendered moot upon the death of the decedent." *See Jackson v. Wexford Health Sources, Inc.*, No. 20-cv-0900-DWD, 2021 WL 2456530, at *3 (S.D. Ill. June 16, 2021). But even though

14

the Act does not create a cause of action, that does not mean that the Court must dismiss Plaintiff's Survival Act claim. *Wadelton v. Whiteside Cnty.*, No. 3:23-cv-50104, 2024 WL 1521452, at *1-2 (N.D. Ill. Apr. 8, 2024) (refusing to dismiss plaintiff's Survival Act claim based on defendants' argument that the Survival Act does not create a cause of action). This is because, under the Federal Rules of Civil Procedure, "plaintiffs are required to plead facts, not legal theories or causes of action." *Id.* at *1. As long as a plaintiff's "underlying factual allegations in these counts are sufficient to state a claim (for example, a tort claim) that [the decedent] could have brought while he was alive," then the Survival Act claim can survive. *Id.*

Here, Defendants do not argue that Plaintiff's allegations are insufficient to state a claim to support relief under the Survival Act. Nor could they reasonably make that argument, because Plaintiff easily stated a tort claim for negligence and/or willful and wanton conduct. *See Bragado v. City of Zion/Police Dep't*, 788 F. Supp. 366, 373 (N.D. Ill. 1992) (construing Survival Act count to plead a common law negligence claim); *Jackson*, 2021 WL 2456530, at *3 (finding allegations sufficient to state a claim under the Survival Act based on a negligence or willful and wanton theory); *see also Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2011) (the standard for "willful and wanton" is essentially the same as the deliberate indifference standard). Accordingly, Plaintiff's Survival Action claim should not be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should deny the IDOC Defendants' partial motion to dismiss.

Date: February 27, 2025                                     Respectfully submitted,

                                                                               /s/ *Vanessa del Valle*
                                                                               Attorney for Plaintiff

Sarah Grady
Vanessa del Valle
Terah Tollner
David Howard Sinkman
Amelia Caramadre
KAPLAN & GRADY LLC
2071 N. Southport Ave., Suite 205
Chicago, Illinois 60614
(312) 852-2184
vanessa@kaplangrady.com