THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CHUNECE JONES-BROADWAY, as Administrator of the Estate of MICHAEL BROADWAY, <br><br> Plaintiff, <br><br> v. <br><br> ILLINOIS DEPARTMENT OF CORRECTIONS, et al. <br><br> Defendants. | Case No. 1:24-cv-11700 <br><br> Honorable Andrea R. Wood, District Judge <br><br> Honorable Heather K. McShain, Magistrate Judge |

**PLAINTIFF'S OPPOSED MOTION FOR ENTRY OF A
<u>HIPAA-QUALIFIED PROTECTIVE ORDER</u>**

Plaintiff, through her undersigned counsel, hereby moves the Court to enter a HIPAA-qualified protective order pursuant to 45 C.F.R. § 164.512(e). A proposed order is being transmitted to the Court's chambers via email concurrently with this motion.

**BACKGROUND**

This is a civil rights action brought under 42 U.S.C. § 1983 by Chunece Jones-Broadway, the wife and administrator of the estate of Michael Broadway. *See* Dkt. 77 (Am. Compl.). Michael Broadway was in the custody of the Illinois Department of Corrections ("IDOC") at Stateville Correctional Center when he died. *See id.* ¶¶ 13, 26. Defendant Wexford Health Sources, Inc. ("Wexford") is the healthcare provider for IDOC prisons throughout the State, including Stateville, and was responsible for implementing, overseeing, and supervising policies and practices at Stateville and IDOC generally. *Id.* ¶ 12.

Defendant Wexford was aware that Mr. Broadway suffered from severe asthma. *Id.* ¶ 37. On June 19, 2024, Mr. Broadway was housed on the highest floor of his cellhouse. *Id.* ¶¶ 38, 42. Outdoor temperatures soared to nearly 100 degrees, and indoor temperatures were significantly

hotter. *Id*. ¶¶ 42-43. When Mr. Broadway began struggling to breathe in the oppressive heat, his friends pleaded for help. *Id*. ¶ 44. Eventually a call was placed to the health care unit, where Wexford employees were staffed, informing them that Mr. Broadway was in respiratory distress. No one in the health care unit called a Code 3, which alerts correctional and medical staff to respond to a medical emergency. *See id*. ¶¶ 46, 52, 65. When a Code 3 was finally called by correctional staff—long after the medical staff in the health care unit became aware of Michael's serious medical needs—Defendant Edward Berzinski and other Wexford nurses responded without the standard lifesaving medical equipment they needed. *Id*. ¶ 65. It was nearly an hour after Mr. Broadway first called for help when he was finally transported by ambulance to St. Joseph's Hospital. *Id*. ¶ 69.

Mrs. Jones-Broadway has sued Wexford, as well as individual IDOC and Wexford employees, for the violations of Mr. Broadway's rights under federal and state law. In support of her Section 1983 claim against Wexford, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Plaintiff alleges that Mr. Broadway's death was caused by Wexford's widespread practices of denying adequate medical care to prisoners in IDOC. *Id*. ¶¶ 81-86. Wexford healthcare personnel in IDOC commonly fail to respond or follow up on complaints by prisoners about their health status, delay in responding to emergent situations, fail to respond to emergent situations with necessary medical equipment, and/or do not sufficiently stock the bare minimum medical equipment, fail to adequately diagnose or treat patients in their care, and delay in contacting emergency medical services even when such emergent offsite treatment is necessary. *Id*. ¶ 84. Despite knowing about these problematic policies and practices, Defendant Wexford did nothing to ensure that prisoners in IDOC—including Mr. Broadway—received adequate medical care and access to medical care. *Id*. ¶ 83.

A HIPAA-qualified protective order covering third parties is necessary to permit discovery into Plaintiff's *Monell* claim, which will unquestionably require the production of documents containing the personal health information of prisoners other than Mr. Broadway. On January 27, 2025, Plaintiff's counsel conferred with counsel for the Wexford and IDOC Defendants regarding such a protective order, and Plaintiff explained that discovery into third-party medical records is centrally relevant to Plaintiff's *Monell* claim. The parties agreed that it was necessary to quickly gain entry of a protective order concerning Mr. Broadway's protected health information ("PHI") but could not reach agreement on the inclusion of third parties in the protective order. Accordingly, Wexford Defendants filed an unopposed motion for entry of a HIPAA-qualified protective order on January 28, 2025, which covered the PHI of Mr. Broadway only, Dkt. 37, and which this Court entered. Dkt. 41-42. Also on January 28, Plaintiff's counsel sent a proposed third-party HIPAA-qualified protective order to Defendants' counsel, along with several examples of substantially similar orders that have been entered in other cases within the Seventh Circuit involving *Monell* claims against Wexford. Since then, all Defendants have objected to Plaintiff's motion for entry of the order. Plaintiff has conferred with Defendants as required by Local Rule 37.2 and this Court's procedures, as set forth in her separate Certificate of Compliance.

## ARGUMENT

Under the Health Insurance Portability and Accountability Act ("HIPAA"), a protective order is procedurally required to permit discovery into the PHI of prisoners in the custody or care of Wexford and the IDOC. Third-party medical records are a crucial and established part of discovery in cases like this one where the plaintiff has brought a *Monell* claim against Wexford based on its alleged widespread practices.

3

The Defendants' objections, which have been conveyed to Plaintiff during the meet-and-confer process, should be rejected. The IDOC Defendants contend that *Monell* discovery is premature. This argument is meritless, both because *Monell* discovery is well underway and because the protective order would have no effect on the permissible scope of discovery. Wexford (the only Defendant against whom Plaintiff has brought a *Monell* claim) has not moved to dismiss the *Monell* claim, moved to stay discovery on this claim, or even raised an objection that Plaintiff's discovery into her *Monell* claim is premature. In fact, both sets of Defendants have produced relevant *Monell* discovery and have indicated in conferences with Plaintiff's counsel that they are investigating the production of further responsive documents. Regardless, this argument has no bearing on this motion because a protective order would not affect the scope of discovery. This motion does *not* seek to require Defendants to produce third-party medical records. Rather, Plaintiff's proposed protective order simply offers a mechanism that complies with HIPAA to permit the parties to seek and obtain such material. The Wexford Defendants, for their part, object on the ground that third parties must consent to the production of their PHI in litigation. But under Seventh Circuit case law discussed below, HIPAA-qualified protective orders authorize the release of information without the consent of third parties, and such information will be designated confidential and protected from further disclosure.

Because Plaintiff's *Monell* claim requires obtaining the personal health information of third parties, this Court should grant Plaintiff's motion and enter the HIPAA-qualified protective order.

**I.      A HIPAA-qualified protective order under 45 C.F.R. § 164.512(e) establishes a mechanism for obtaining third-party PHI in discovery.**

To gather the relevant medical records of other Wexford patients (their "PHI," in the parlance of HIPAA), Plaintiff requires the entry of a "HIPAA-qualified protective order."

4

Outside of the context of litigation, HIPAA's protective measures, which are promulgated through enabling regulations, generally safeguard the privacy of PHI by providing that a person's PHI may only be disclosed if the person is (1) notified of the disclosure and (2) consents to it. *See* 45 C.F.R. §§ 164.508; 164.510. In the context of litigation, however, HIPAA safeguards the privacy of a person's PHI through protective orders.

Under HIPAA's regulations, disclosure of a person's PHI "[i]n response to a subpoena, discovery request, or other lawful process" is permitted without notice and consent so long as the requesting party has secured "a qualified protective order." 45 C.F.R. § 164.512(e)(1)(ii); *see also id.* ("A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section . . . .").

When such a qualified protective order has been entered, HIPAA "unequivocally permits health care providers and other covered entities to disclose protected health information . . . in judicial proceedings." *Sanchez v. McCray*, No. 05-cv-22171, 2008 WL 11452601, at *3 (S.D. Fla. Feb. 25, 2008) (citing *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004)); *see also In re Zyprexa Prod. Liab. Litig.*, 254 F.R.D. 50, 53-54 (E.D.N.Y. 2008) ("Under section 164.512, it is evidently denudate that a purpose of HIPAA was that health information, that may eventually be used in litigation or court proceedings, should be made available during the discovery phase." (citing section 164.512(e)(1)(ii) (quotation omitted))). The entry of a HIPAA-qualified protective order should therefore be uncontroversial and routine in a case like this where third-party PHI is required to prove a party's claim.

II. **Plaintiff requires third-party PHI to prove her *Monell* claim against Wexford.**

Plaintiff has brought a Section 1983 claim against Wexford pursuant to a *Monell* widespread-practice theory. The Seventh Circuit has repeatedly held that to prove such claims, a

5

*Monell* plaintiff almost always must present evidence of *other incidents* that indicate the existence of the widespread practice the plaintiff contends caused the injury. In other words, where a Section 1983 plaintiff claims that the constitutional injury was caused by a widespread practice of inadequate medical care, the Court of Appeals has found that the plaintiff typically must show that other prisoners (not just the plaintiff or decedent) were subjected to the same widespread practice of inadequate care. *See, e.g.*, Howell v. Wexford Health Sources, Inc., 987 F.3d 647, 655 (7th Cir. 2021) ("[T]here can be little doubt that a practice or custom theory will be more persuasive if a plaintiff can show that the defendant government or company treated other, similarly situated patients in similar unconstitutional ways."); Dean v. Wexford Health Sources, Inc., 18 F.4th 214, 237 (7th Cir. 2021) (overturning *Monell* jury verdict against Wexford where the plaintiff "did not introduce evidence that [the alleged unconstitutional practice] had caused unconstitutional [medical care] for other prisoners"); Hildreth v. Butler, 960 F.3d 420, 427 (7th Cir. 2020) (affirming summary judgment in Wexford's favor on the plaintiff's *Monell* claim based on the plaintiff's failure to provide evidence regarding other incarcerated individuals); Daniel v. Cook Cnty., 833 F.3d 728, 734-35 (7th Cir. 2016) ("To prove an official policy, custom, or practice within the meaning of *Monell*, [the plaintiff] must show more than the deficiencies specific to his own experience, of course."); *see also* Watkins v. City of Chicago, No. 19-cv-06615, 2022 WL 1045703, at *7 (N.D. Ill. Apr. 7, 2022) (dismissing a *Monell* claim where plaintiff did not provide "examples of other similarly situated individuals that experienced a comparable pattern of tortious behavior").

District courts, including this one, have repeatedly ordered that *Monell* plaintiffs must be permitted to obtain discovery into the PHI of third parties precisely because that evidence is centrally relevant to *Monell* cases against Wexford. *See, e.g.*, Arsberry v. Wexford Health Sources,

*Inc.*, No. 17-cv-50044, 2021 WL 5232733, at *5 (N.D. Ill. Nov. 10, 2021) (approving discovery regarding medical care provided to other prisoners over Wexford's objection because "Plaintiff's *Monell* claim alleges an unconstitutional policy or practice . . . . Accordingly, Plaintiff must show a sufficiently widespread practice affecting other inmates . . . , which necessarily goes beyond the specific inadequate medical treatment he received."); *Reed v. Wexford Health Sources, Inc.*, No. 20-CV-01139-SPM, 2021 WL 5578076, at *2 (S.D. Ill. Oct. 19, 2021) ("To succeed on a claim against Wexford, a plaintiff is required to show systemic and gross deficiencies that have impacted others in IDOC custody not just the plaintiff. Thus, generally speaking, third party medical information is discoverable." (quotation and citation omitted)); *Green v. Meeks*, No. 20-CV-00463-SPM, 2021 WL 3631264, at *4 (S.D. Ill. July 14, 2021) (affirming discovery of healthcare provided to other prisoners in a *Monell* case against Wexford because "Plaintiff is required to show 'systemic and gross deficiencies' that have impacted others in IDOC custody"); *Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985, at *3 (N.D. Ill. Nov. 24, 2020) (ordering production of third-party medical information as necessary to prove the plaintiff's *Monell* claim against Wexford); *see also Hirsch v. Will County*, No. 19 CV 7398, 2024 WL 3792187, at *3 (N.D. Ill. Jan. 24, 2024) (ordering Wellpath, a correctional medical provider, to remove redactions of third-party detainees because "Plaintiff has brought a *Monell* claim and the inherent nature of such a claim demands 'a broad and substantial amount of discovery.'" (citation omitted)).

Plaintiff's proposed order is nearly identical to the HIPAA-qualified protective orders entered by district courts in this Circuit in the following cases against Wexford:

**Dangerfield v. Wexford Health Sources, Inc.**, No. 23-cv-3687, Dkt. 75 (S.D. Ill. June 27, 2024) (McGlynn, J.) (Wexford medical personnel failed to ensure that man suffering from cirrhosis was seen by a hepatologist or evaluated for a liver transplant even though that is the only cure for the terminal disease).

**Johnson-Barker v. Wexford Health Sources, Inc.**, No. 21-cv-01234, Dkt. 83 (C.D. Ill. Sept. 1, 2022) (Shadid, J.) (man suffering from schizophrenia died of severe dehydration

after Wexford medical and mental health personnel ignore his acute mental health crisis where he stops eating or drinking).

***McCaffrey v. McAtee***, No. 21-cv-03029, Dkt. 89 (C.D. Ill. Aug. 26, 2022) (Darrow, C.J.) (signs of plaintiff's childbirth labor dismissed by Wexford medical personnel, forcing her to give birth unassisted in a prison shower room).

***Wiley v. Wexford Health Sources, Inc.***, No. 3:21-cv-00599, Dkt. 55 (S.D. Ill. Mar. 11, 2022) (Dugan, J.) (Wexford medical personnel failed to take basic diagnostic steps to determine why man has been losing weight and suffering from severe abdominal pain for months on end; after man is finally sent to outside emergency room, he is diagnosed with advanced abdominal cancer, but Wexford responds slowly in obtaining chemotherapy).

***Reed v. Wexford Health Sources, Inc.***, No. 20-cv-1139, Dkt. 41 (S.D. Ill. Oct. 19, 2021) (McGlynn, J.) (man suffering from colon cancer died after Wexford medical staff disregarded signs of severe digestive problems and other indications indicative of colon cancer, leading to substantially delayed diagnosis, which was followed by delays in treatment even after the cancer was diagnosed).

***Jackson v. Wexford Health Sources, Inc.***, No. 20-cv-00900, Dkt. 41 (S.D. Ill. Jan. 7, 2021) (Dugan, J.) (man suffering from schizophrenia died after Wexford medical personnel ignore his catatonia and refuse to send him for medical care, against request of IDOC mental health personnel).

***Green v. Meeks***, No. 19 C 7089, Dkt. 28 (N.D. Ill., Jan. 17, 2020) (Durkin, J.) (man suffering from liver disease died after Wexford medical personnel failed to provide evaluations and treatment necessary to save his life); *see also* ***Green v. Meeks***, No. 20-CV-00463-SPM, 2021 WL 3631264, at *1 (S.D. Ill. July 14, 2021) (McGlynn, J.) (denying Wexford's motion for reconsideration of order entering ESI protocol on third-party PHI because the HIPAA-qualified protective order "adequately protect[ed] the health information of non-parties from unauthorized disclosure").

In each of the seven cases cited above, the plaintiff alleged, as the Plaintiff in this case does, that pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Wexford has widespread practices of providing inadequate medical care that harmed the decedent/plaintiff. Like the plaintiff in each of these cases, Plaintiff is entitled to obtain discovery on her *Monell* claim by gathering evidence about the medical care that Defendants provided to other prisoners, not just the decedent.

For these reasons, the medical records of other prisoners are both essential and proportional to the claims and defenses in this case. Plaintiff moves to enter the proposed order to authorize

8

such discovery under HIPAA. Importantly, however, entry of such the proposed order would not waive any of the Defendants' potential objections to particular *Monell* discovery requests based on relevance or proportionality.

### III. The IDOC Defendants' argument that *Monell* discovery is premature is meritless.

*Monell* discovery is not premature—it has been ongoing for months. Wexford did not move to dismiss Plaintiff's *Monell* claim against it, has not moved to stay discovery, and has not otherwise objected that *Monell* discovery must be halted. In fact, both sets of Defendants have produced relevant *Monell* discovery and have indicated in conferences with Plaintiff's counsel that they are investigating the production of further responsive documents. Counsel for the IDOC Defendants has even assured Plaintiff's counsel that they were investigating a certain category of documents that involve third-party PHI and which Plaintiff has explained are being sought to prove up her *Monell* claim. There is nothing premature about a HIPAA-qualified protective order that would facilitate the production of these documents.

But even if the IDOC's prematurity objection had merit, it does not constitute a basis to oppose entry of the proposed HIPAA-qualified protective order. The proposed order does not alter or purport to dictate the proper scope of discovery. It is Rule 26(b)(1), not HIPAA, that controls the proper scope of discovery in this case: "HIPAA provisions do not create a privilege against production or admission of evidence; they merely create a procedure for obtaining protected medical records in litigation." *Reed*, 2021 WL 5578076, at *2. With or without a protective order, "Defendants are still free to object to Plaintiffs' discovery requests on other grounds, including relevance, privilege, overly broad, and undue burden or expense." *Id*. at *3; *see also Ousterhout v. Zukowski,* No. 11 cv 9136, 2014 WL 804079, at *3 (N.D. Ill. Feb. 28, 2014) ("Undoubtedly, both parties may find that the HIPAA protective order does not address all of the possible

9

objections to production based on other theories. However, it will at minimum remove any HIPAA-related barriers, and that alone will allow for a more fruitful discovery effort on both sides."). For that reason, the supposed prematurity of *Monell* discovery is not a valid basis to oppose entry of a protective order, which would merely remove a roadblock to the *Monell* discovery that is already underway.

    **IV.    The Wexford Defendants' objection based on third-party consent should similarly be rejected.**

Plaintiff understands from her August 4, 2025, conference with counsel for the Wexford Defendants that it opposes any production of the PHI of third parties without their consent. As explained in Sections I and II, a HIPAA-qualified protective order properly and explicitly permits the confidential disclosure of third-party PHI in the context of litigation *without* consent from the individual, *see* 45 C.F.R. § 164.512(e)(1)(ii) ("A covered entity may use or disclose protected health information without the written authorization of the individual . . . or the opportunity for the individual to agree or object . . . ."), and such orders are regularly entered in cases with *Monell* claims against Wexford. *See, e.g.*, *Wiley v. Young*, No. 21-CV-599-JPG, 2022 WL 9845764, at *2 (S.D. Ill. Oct. 17, 2022). Wexford can provide no reason why onerous consent requirements should be applied in this case when there is an appropriate and commonly-employed mechanism by which third-party PHI will be kept confidential.

## CONCLUSION

For the foregoing reasons, this Court should enter Plaintiff's proposed HIPAA-qualified protective order for third-party PHI, to be transmitted to the Court electronically concurrently with this Motion.

10

August 11, 2025	Respectfully submitted,

                                                    /s/ *Terah Tollner*
                                                   Terah Tollner
                                                   Attorney for Plaintiff

Sarah Grady
Vanessa del Valle
John Hazinski
Terah Tollner
KAPLAN & GRADY LLC
2071 N. Southport Ave., Suite 205
Chicago, Illinois 60614
(312) 852-2184
terah@kaplangrady.com