# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHUNECE JONES-BROADWAY, AS ADMINISTRATOR TO THE ESTATE OF MICHAEL BROADWAY, | ) ) ) ) |
| Plaintiff, | ) Case no. 1:24-CV-11700 ) ) |
| v. | ) The Hon. ANDREA WOOD ) ) The Hon. HEATHER K. MCSHAIN |
| ILLINOIS DEPARTMENT OF CORRECTIONS, *et al.*, | ) ) ) |
| Defendants. | ) |

## IDOC DEFENDANTS' RESPONSE TO COURT'S RULE TO SHOW CAUSE

This Court directed the IDOC Defendants to show cause that they should not be required to pay Plaintiff's fees and costs in connection with her motion for a HIPAA-qualified protective order for non-parties, citing Rule 37(a)(5)(A). Rule 26(c)(3) incorporates Rule 37(a)(5). Defendants did not argue that a HIPAA-qualified protective order could never enter. Defendants objected to the scope and sequencing of Plaintiff's proposal and asked that any order conform to applicable Illinois confidentiality laws and be tailored to the needs of this case, including privacy and proportionality. The undersigned's caselaw research has not revealed any case in which the grant of an opposed third-party HIPAA order resulted in an award of fees or expenses.

Furthermore, fees should not be awarded because Rule 26(c)(3) does not apply without corresponding discovery that "is sought" through a formal discovery request, such as under Rule 34. Fed. R. Civ. P. 26(c)(1) (rule governs instances where party "from whom discovery is sought" moves "for a protective order").

Even if Rule 26(c)(3) applies, fees should not be allowed for three reasons under Rule 37(a)(5)(A): (1) Defendants' position was substantially justified, (2) Plaintiff did not attempt in good faith to obtain the relief without court action and the motion was premature, and (3) other circumstances make a fee award unjust, including the mixed nature of the Court's ruling and the fact that court involvement was necessary under HIPAA regardless of Defendants' stance.

I. **Rule 26(c) applies to protective orders brought by "a party or any person from whom discovery *is* sought;" it does not apply to motions that *may* seek discovery.**

This Court's order of September 4, 2025 cites Fed. R. Civ. P. 37(a)(5)(A). Dkt. 115. However, that rule by its terms applies "[i]f the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—…."The "motion" referred to is one of the three described in Rule 37(a)(3)(A)-(C) to compel disclosure; to compel a discovery response; or related to a deposition. Plaintiff's motion emphasizes they are not seeking discovery; it clearly does not relate to a Rule 26 disclosure; nor is it related to a deposition. None of those apply to a motion for a HIPAA protective order. Thus Rule 37(a)(5)(A) is not applicable.

Rule 26(c)(3) states; "Rule 37(a)(5) applies to the award of expenses." However, like Rule 37, Rule 26(c)(3) does not apply to the present motion. Rule 26(c) covers protective orders which in general are for "[a] party or any person *from* whom discovery is *sought*…." Plaintiff is not a target of discovery, nor is Plaintiff seeking discovery. Plaintiff moved for a third-party HIPAA protective order under Rule 26(c) without issuing any discovery requests for the material the order would have potentially

covered—third-party PHI. Since Rule 26(c) only applies to protective orders regarding "discovery" that "is sought," its expenses provision—26(c)(3)—does not apply here.

Additionally, Rule 37(a)(5)(A) does not apply because Defendants' conduct did not "necessitate" Plaintiff's motion. Fed. R. Civ. P. 37(a)(5)(A) (mandatory fees against party that "necessitated" filing of granted motion). A HIPAA-qualified protective order is often a statutory prerequisite to the lawful disclosure of nonparty PHI under 45 C.F.R. § 164.512(e) by custodians of such records, like the IDOC. Plaintiff would have needed court authorization regardless of Defendants' position. Defendants' objections went to scope and proportionality, and Illinois citizens' privacy, not necessarily to whether any protective order can lawfully enter at all, ever. That distinction matters. The Rule shifts fees when a party's conduct forces motion practice to obtain discovery; here, the framework for the HIPAA order itself required court involvement. Defendants did not withhold documents, miss deadlines, or refuse to confer. Again, since Plaintiff has not issued any discovery requests that cover third-party PHI, Plaintiff's proposed HIPAA order has been about a hypothetical discovery request (the scope of which has not been shared with Defendants), not an actual one.

Plaintiff might argue that, by Defendants' objections to the order, Plaintiff had to write a longer motion. To the extent Plaintiff's motion for non-party HIPAA order was lengthier than an "unopposed" motion could be, that reflects Plaintiff's strategic choices, not any causal link between Defendants' conduct and the need to file. The question under Rule 37 is plain—what made a motion necessary in the first place? Because a HIPAA order was necessary either way, the plain text of Rule 37(a)(5)(A) is not satisfied. And, even if the Court views Defendants' timing or framing as contributing to the briefing,

3

that would speak at most to the length or complexity of the Plaintiff's motion, not to whether a motion had to be filed at all. Additionally, the Court's request that Plaintiff file a reply underscores that there was a genuine dispute, not obstruction. (Minute Entry of Aug. 22, 2025, ECF No. 111) (ordering Plaintiff to reply "addressing whether and to what extent the Illinois statute relied on by defendants, 735 ILCS 5/8−802, applies in this case, given that plaintiff has brought claims arising under state and federal law.").

Indeed, according to this Court's order in *Haywood v. Wexford Health Sources Inc.*[1]—an order that informed the Court's reasoning in the instant September 4, 2025, order—no motion was necessary yet, and the circumstances of that case are distinguishable. In *Haywood*, the plaintiff served requests to produce Excel spreadsheets, and the defendant produced PDF versions of those spreadsheets, which the defendant did to "redact[], bates stamp[], sort[] via bookmarks, and produce[] to plaintiff." This Court sanctioned the defendant for its improper discovery response.

Here, though, no such discovery requests have been propounded, meaning that it is unclear what "discovery is sought" that would trigger Rule 37(a)(5)(A)'s application, other than "non-party PHI," or the analysis of this Court's framework for imposing sanctions in a like circumstance as in *Haywood*. This motion does not seek to require Defendants to produce third-party medical records.

Defendants recognize that this position may seem exacting and text-driven, but such a reading is not unfair here. Rather, it is the point of rules that impose mandatory sanctions: Mandatory fee-shifting rules should be applied with precision so that litigants have fair notice of when routine disagreements will, and will not, trigger sanctions. The

---

[1] No. 16 CV 3566, 2021 WL 2254968, 2021 U.S. Dist. LEXIS 104363, at *2-3 (N.D. Ill. June 3, 2021).

Rules' text gives that notice. Where Rule 26(c)(3) cross-references Rule 37(a)(5)(A), the required "discovery is sought" and "necessitated the motion" are not vague. They are concrete terms that must be satisfied as written. "Discovery is sought" means discovery that exists in the case, not discovery that might be sought later. And a motion is "necessitated" only when the opposing party's conduct is the but-for cause of having to file it. See *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017) (sanctions require a causal connection between the misconduct and the fees sought, not to deter but to remedy). Read this way, these elements to trigger sanctions protect both sides by making fee-shifting under the Rules mechanical rather than impressionistic.

Applied here, those textual triggers are not met. No Rule 34 requests for third-party PHI were served, so there was no concrete discovery "sought" to which Rule 26(c) or Rule 37(a)(5)(A) could attach. And even if the Court concludes that a protective order should enter, HIPAA itself makes court authorization a prerequisite to any disclosure by nonparty custodians. See 45 C.F.R. § 164.512(e). That regulatory prerequisite, not Defendants' objections to scope and timing, is what made motion practice inevitable. In that posture, a fee award would exceed the rule's text and blur the lines that mandatory sanctions should preserve.

## II. Even if Rules 26(c)(3) and 37(a)(5) apply, expenses are not warranted.

Assuming that Rule 26(c)(3) or Rule 37(a)(5)(A) are triggered, fees are not warranted for all of the reasons stated under the rule's exceptions: (1) substantial justification, (2) failure to sufficiently meet and confer, and (3) other circumstances make an award of fees unjust. Accordingly, this Court should decline to impose any sanction.

## A. Substantial Justification under Rule 37(a)(5)(A)(ii).

Defendants' positions were substantially justified under Rule 37(a)(5)(A)(ii). While this Court in *Haywood v. Wexford*, No. 16-cv-3566, had previously rejected reliance on the Illinois Confidentiality Act, Defendants raised other legitimate concerns that supported resisting Plaintiff's motion. Plaintiff's request, in effect, opened the door to hundreds of unrelated third parties' medical records. Defendants reasonably urged the Court to consider comity, sequencing of discovery, and proportionality before considering discovery in that fashion. These are classic 'reasonable minds could differ' issues, which fall comfortably within the substantial-justification exception.

Substantial justification means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (cleaned up). In other words, it means a "reasonable basis both in law and fact." *Id.* It That said, a party's position can be substantially justified but incorrect, as long as a reasonable person *could* think that the position was correct. *Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir. 1994) ("The test for substantial justification is whether the agency had a rational ground for thinking it had a rational ground for its action . . . .").

Here, Defendants' argument has such a justification. They argued that principles of comity and discovery sequencing warranted holding off, or at minimum tailoring the protective order, given Plaintiff's expansive request and the presence of state-law claims. (ECF No. 110 at 2, 6.) That is a reasonable case-management and comity argument, not an attempt to manufacture a privilege out of whole cloth. Relatedly, the Court asked for additional briefing before ruling, ordering Plaintiff to file a reply addressing whether and

to what extent the Illinois Confidentiality Act applies here. There was at least a genuine dispute to resolve and that Defendants' position was not taken in bad faith.

The issue of third-party confidentiality was not the only concern Defendants raised. As Plaintiff acknowledged in her opening motion,[2] the IDOC Defendants flagged the cost and burden of opening third-party PHI discovery while the viability of any *Monell* theory remained significantly unsettled. That position was substantially justified, even if it was not the centerpiece of Defendants' response. District courts in this Circuit routinely stage or narrow *Monell* discovery to avoid unnecessary burden, and *Haligas v. City of Chicago* underscores the Court's authority to control the sequence and scope of such discovery, 671 F. Supp. 3d 894, 895 (N.D. Ill. 2023). Consistent with that approach, IDOC Defendants raised facial proportionality and overbreadth concerns, including the absence of limits on timeframe, conditions, or facilities. The Court agreed those narrowing issues can be proper but concluded they should be addressed in the next phase after Plaintiff serves targeted requests, and it invited Defendants to raise them then. Reasonable lawyers could differ about when and how to surface those limits, which satisfies Rule 37's substantial-justification exception even though the threshold privilege question was resolved against Defendants.

Although Plaintiff sought a protective order before serving any discovery request, Defendants explained that scope and proportionality are appropriate subjects for early case management given the *Monell* posture and the fact that the provider whose care is at issue—the "Jane Doe," Jennifer Henning—was a State employee rather than a municipal actor like Wexford. (*Contrast* Pl.'s Compl. at ECF No. 1 ¶¶ 12, 20, 129-131,

---

[2] (ECF No. 105.)

7

*with* Pl.'s Am. Compl. at ECF No. 77 ¶¶ 12, 20, 129-131.). These objections were not obstructionist—they were tied to an evolving record that cast doubt on whether *Monell* discovery was warranted at all.

The Court did not reject Defendants' breadth and proportionality concerns on the merits. By preserving Defendants' ability to seek targeted limits once requests are served, the Court confirmed this was a timing question rather than a substantive failure to consider the law. That type of reasonable disagreement about when to raise scope objections fits Rule 37(a)(5)(A)'s substantial-justification exception even though the threshold privilege issue was decided against Defendants.

### B. Further meet-and-confer efforts could have obviated the motion.

Rule 37(a)(5)(A)(i) excuses fee-shifting when "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." Under Local Rule 37.2 and this Court's standing procedures, parties must confer in person or by videoconference before filing any discovery motion, and a mere exchange of correspondence is not sufficient.

Here, Plaintiff filed the motion without serving any discovery requests directed to nonparty PHI and without engaging in adequate video or telephonic discussions to narrow the proposal. The only communication consisted of a single yes/no exchange, followed by citations to minute entries from other cases where Plaintiff's counsel asserted that such orders are routinely entered and must effectively issue as a matter of course. That approach falls short of both the letter and the spirit of Local Rule 37.2 and this Court's standing order, which emphasize personal engagement as the most effective way

8

to resolve discovery disputes. By bypassing that requirement, Plaintiff filed prematurely, and fee-shifting is expressly excused in this posture.

Plaintiff first reached out by email to Defendants about a non-party HIPAA order on January 28, 2025, attaching the text of the proposed order, ten minute-entries or orders from other courts, and stating that similar orders had been entered as a matter of course, sometimes unopposed or by joint motion with Wexford, and asking Defendants to indicate their positions.[3]

On March 14, 2025, as noted above, Plaintiff filed her amended complaint (ECF No. 77), which originally identified the nurse as a "'Jane Doe" Wexford provider but then shifted to naming Jennifer Henning, an IDOC nurse. That change was significant because the "Jane Doe" allegation had been the central basis for asserting a *Monell* claim at all. Once the pleadings clarified that the individual at issue was an IDOC employee, the justification for opening broad *Monell* discovery into third-party medical records was seriously undermined.

On March 20, 2025, the undersigned responded to Plaintiff in writing expressing that, given the amended allegations, the *Monell* theory against Wexford appeared significantly narrowed, that production would place a disproportionate burden on IDOC as custodian of records, and that it was premature to enter a broad third-party HIPAA order. Defendants proposed instead to proceed first with fact discovery relating to Mr. Broadway himself, with the understanding that broader issues could be revisited later in discovery if still relevant.

---

[3] The Standards for Professional Conduct Within the Seventh Federal Judicial Circuit, Lawyers' Duties to Other Counsel ¶ 30 requires counsel to "not send copies of correspondence between counsel to the court."

On July 30, 2025, during the first, last, and only videoconference at which this issue was raised with IDOC Defendants, counsel reiterated Defendants' proportionality and sequencing concerns and explained that *Monell* discovery is often stayed or bifurcated in this District. Plaintiff's counsel did not meaningfully engage with those points. Instead, the exchange consisted of Plaintiff's counsel asking whether the parties were "at impasse," Defendants confirming their position that *Monell* discovery should be sequenced, and Plaintiff's counsel responding that they would move for entry of the order and simply note Defendants' opposition. No discussion took place about tailoring the proposal by timeframe, conditions, facilities, or custodians.

Plaintiff's Local Rule 37.2 certificate characterizes this singular videoconference as a "good faith" effort to resolve the dispute. (ECF No. 106) (Pl.'s Cert. of Compliance with Local Rule). But, the substance of the exchange was limited to Plaintiff declaring an impasse and announcing an intent to seek court intervention, without meaningful effort to negotiate limitations or alternatives, or seek cooperation. That does not satisfy the letter or spirit of Local Rule 37.2, which this Court's standing order emphasizes requires substantive, good-faith engagement by videoconference or in person—not perfunctory exchanges designed to set up a motion.

### C. Other circumstances make sanctions unjust.

This Court is entering a protective order pursuant to HIPAA. This Court is not entering a protective order pursuant to Rule 26. This Court has not compelled Defendants to produce anything they had stonewalled. HIPAA requires court authorization before nonparty PHI may be disclosed in litigation, see 45 C.F.R. § 164.512(e), so judicial involvement was inevitable regardless of Defendants' position. Simply put, awarding fees

10

here would punish Defendants for raising reasonable narrowing concerns in a posture where the Court had to act to remove a statutory barrier. Fees would not be fair here. Fed. R. Civ. P. 37(a)(5)(A)(iii).

First, Plaintiff's own filings confirm the point. When Plaintiff believed fees were warranted, as in her motion to compel (ECF No. 101 at 6), she requested them expressly. But, she did not seek fees with the instant HIPAA protective-order motion. That contrast indicates Plaintiff did not view Defendants' position as sanctionable obstruction and weighs against shifting fees now. As a public office representing State of Illinois defendants, the Illinois Attorney General's Office generally refrain from seeking fees even when they prevail on discovery disputes. That restraint reflects a deliberate effort to conserve public resources and maintain a cooperative posture in cases where the parties appear before this Court on a near-daily basis. If fee-shifting were applied reflexively to good-faith disagreements, it would create incentives for both sides to treat every discovery dispute as a vehicle for sanctions. Rule 37 is not designed to invite that cycle, but to address clear obstruction or bad faith. This dispute was neither.

Second, the ruling was mixed in a way that matters for equity. The Court resolved the threshold question of Illinois' confidentiality rules against Defendants, but it asked for additional briefing before doing so and then preserved Defendants' ability to raise proportionality and overbreadth objections in the ordinary course after entry. (ECF No. 116) ("defendants are free to challenge the scope of plaintiff's request for nonparty prisoners' PHI if such challenges are warranted based on the law and the facts"). Accordingly, there was a genuine dispute to resolve and Defendants' concerns about scope and privacy were not frivolous, but simply raised at the wrong time. Fees are designed

to deter stonewalling and needless motion practice, not to penalize a party for presenting discovery-timing and tailoring arguments that the Court expressly invited.

The case posture further counsels against fees. Plaintiff pressed for a blanket HIPAA order before serving requests directed to third-party PHI, while the pleadings were still shifting on who provided the care at issue. What began as a "Jane Doe" Wexford-nurse allegation became an identification of an IDOC nurse, which undercuts the principal fact for broad *Monell* discovery into third-party medical records. Indeed, only one Wexford nurse is a defendant — Edward Berzinski — and his involvement was principally calling 911, not acting pursuant to any corporate policy of delay during emergencies.

Defendants' request—to stage discovery and defer any nonparty PHI production until narrowly tailored requests were served—was a reasonable case-management approach. In these circumstances, shifting fees would chill parties from raising legitimate proportionality and comity concerns at the appropriate time.

Plaintiff's singular meet-and-confer showing from July 30, 2025 does not change that conclusion. The lone videoconference on this topic ended with Plaintiff declaring impasse and announcing an intent to move, without engaging on any limits by time period, condition, facility, or custodian. In this posture, fee-shifting would reward rushed motion practice that this Court's standing order discourages and would do little to advance efficient resolution of discovery disputes. The parties have otherwise been productive, and that cooperation has come from both sides, not only Defendants. On the whole, therefore, it would be unjust to impose sanctions here.

### III. Conclusion

The undersigned has been unable to locate any case in which an opposed third-party HIPAA order resulted in an award of fees or costs. Plaintiff has not requested fees in seeking entry of this HIPAA qualified protective order, and therefore also believes they are not available in this instance. Given that the Court had to enter some form of HIPAA authorization to allow any nonparty PHI, that the Court invited Defendants to pursue tailoring later, and that Defendants did not miss deadlines or refuse production under Rule 34, the equities cut strongly against sanctions here. This is not the stonewalling that Rules 26(c)(3) and 37(a)(A)(5) aim to deter, and equity warrants declining to impose sanctions. Defendants ask that this Court accordingly discharge the rule to show cause.

Date: September 18, 2025

        Respectfully submitted,

        KWAME RAOUL
        Attorney General of Illinois

By:    */Daniel N. Robbin/*
       Daniel Noah Robbin
       Bar No. 6321386
       Assistant Unit Supervisor, Prisoner Litigation
       General Law Bureau
       Government Representation Division
       Office of the Illinois Attorney General
       115 S. La Salle St.
       Chicago, Illinois 60603
       (312) 814-7199
       daniel.robbin@ilag.gov