# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CHUNECE JONES-BROADWAY,

Plaintiff,

v.

ILLINOIS DEPARTMENT
OF CORRECTIONS, ET AL.,

Defendants.

No. 24 CV 11700

District Judge Wood

Magistrate Judge McShain

## MEMORANDUM OPINION AND ORDER

Pending before the Court are responses by the IDOC defendants [121] and the Wexford defendants [122] to the Court's order to show cause why defendants should not be required to pay the attorney fees and costs that plaintiff incurred in bringing her successful motion for entry of a HIPAA-qualified protective order.[1] For the following reasons, the Court concludes that a fee award is warranted.

## Background

In August 2025, plaintiff filed an opposed motion for entry of a HIPAA-qualified protective order that would permit her to obtain the protected health information (PHI) of nonparty inmates. [105]. Plaintiff sought this evidence to support her *Monell* claim that Wexford had a widespread practice of denying adequate medical care to IDOC prisoners, a claim that cannot succeed unless plaintiff "show[s] that other prisoners (not just the plaintiff or decedent) were subjected to the same widespread practice of inadequate care." [*Id.*] 6; *see also Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214 (7th Cir. 2021). Several months before filing the motion, plaintiff served IDOC with a discovery request for "[a]ll Documents and Communications related to calling and responding to Code 3 medical alerts at Stateville from January 1, 2019, to January 1, 2025." [125-6] 21. On May 23, 2025, the IDOC defendants objected to this RFP on several grounds, including that plaintiff's attempt to discover nonparty inmates' PHI was improper:

In addition, to the extent this request seeks documents concerning Code 3 responses involving other incarcerated individuals, it improperly

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

seeks protected health information and confidential medical records of third parties who are entitled to privacy.

[125-6] 22.

IDOC accordingly refused to produce any documents "aside from materials related to the specific Code 3 medical response involving [plaintiff's decedent] Mr. Broadway on June 19, 2024[.]" [125-6] 22. IDOC's response and objection to the discovery request was signed by the same attorney who signed the IDOC defendants' response to the show-cause order. *Compare* [125-6] 23, *with* [121] 13.

Plaintiff met and conferred with both IDOC and Wexford, which also opposed the HIPAA order, *see* [125-3] 2, but the parties could not reach an agreement. [106]. IDOC and Wexford filed a joint opposition to the motion, arguing that Illinois law "requires Plaintiff to obtain the express consent of the individuals whose PHI she wishes to obtain." [110] 3. Defendants also invoked the Seventh Circuit's decision in *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004), to support their contention that, because plaintiff brought state-law claims in addition to claims under federal law, Illinois law determined whether and under what circumstances the nonparty prisoners' PHI could be disclosed. [*Id.*] 4. Finally, defendants argued that plaintiff's request for nonparty prisoners' PHI was "overly expansive to the needs of the instant litigation." [*Id.*] 6. At the Court's request, plaintiff filed a reply brief addressing whether the statute invoked by defendants, the Illinois Confidentiality Act, 735 ILCS 5/8-802, applied in a case where plaintiff raised claims under state and federal law.

Based on its review of the briefs and the case law cited by the parties, the Court granted plaintiff's motion. The Court first ruled that "the Illinois Confidentiality Act does not apply in a case like this one, where the Court has federal-question jurisdiction." [114] 2. In so ruling, the Court relied on *Northwestern Memorial Hospital*, "which likewise concluded that Illinois's Confidentiality Act, which was more stringent than HIPAA, was inapplicable in a federal-question case." [*Id.*] 3 (internal quotation marks omitted). The Court then held that "[t]he fact that plaintiff here has also brough state-law claims does not require the Court to apply Illinois law" because "when the principal claim arises under federal law, questions of privilege are governed by principles of federal common law," notwithstanding the presence of a pendent state claim. [*Id.*] (internal quotation marks and brackets omitted). Finally, the Court determined that defendants' argument that plaintiff should narrow her request for nonparty prisoners' PHI was not a "proper ground[ ] for opposing entry of a HIPAA order." [*Id.*]. Rather, the Court found that defendants would be free to challenge the scope of plaintiff's request for nonparty PHI once the HIPAA order had been entered, but "the mere possibility that the request is overbroad . . . is no basis to oppose the request for a HIPAA-qualified order, given the law discussed above and defendants' failure to challenge the relevance of the nonparty PHI in their response

2

brief." [*Id.*]. Finally, the Court ordered defendants to show cause under Fed. R. Civ. P. 37(a)(5)(A) why they should not be required to pay the fees and costs that plaintiff incurred in bringing the motion. [*Id.*] 4.

## Legal Standard

Under Rule 26(c), which governs protective orders, "Rule 37(a)(5) governs an award of expenses related to motions for protective orders." *Hudgins v. Total Quality Logistics*, Case No. 16 C 7331, 2024 WL 1618363, at *9 (N.D. Ill. Apr. 15, 2024); *see also* Fed. R. Civ. P. 26(c)(3).

Rule 37(a)(5)(A) provides that if a discovery motion is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The Rule further provides that the court must not award fees if the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). "A party's resistance to discovery is substantially justified if there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *BCBSM, Inc. v. Walgreen Co.*, No. 20 C 1853, 2025 WL 2765327, at *6 (N.D. Ill. Sept. 29, 2025) (internal quotation marks omitted).

## Discussion

The IDOC and Wexford defendants raise multiple arguments as to why the Court should not award fees. None has convinced the Court that defendants' opposition to the motion was substantially justified or that a fee award would be unjust. *See Crandall v. 4Demand, LLC*, No. 17-cv-4185, 2020 WL 11192553, at *1 (N.D. Ill. Aug. 6, 2020) ("The burden is on the losing party to avoid assessment of expenses and fees, rather than on the winning party to obtain such an award.") (internal quotation marks omitted).

### A.    Applicability of Rule 37(a)(5)

The IDOC defendants first argue that Rule 37(a)(5) is inapplicable because that Rule authorizes an award of fees for only three types of motions, none of which is at issue here: a motion to compel a discovery disclosure, a motion to compel a discovery response, and a discovery motion related to a deposition. *See* [121] 2 (citing Fed. R. Civ. P. 37(a)(3)(C)(i)-(iii)). But Rule 26 expressly provides that "Rule 37(a)(5) applies to the award of expenses" associated with a successful motion for a protective order. Fed. R. Civ. P. 26(c)(3). The Court therefore rejects this argument.

3

### B. Whether Plaintiff's Motion Was Subject to Rule 26(c)

Next, the IDOC defendants argue that "Rule 26(c)(3) does not apply to the present motion" because "[p]laintiff is not a target of discovery, nor is [p]laintiff seeking discovery." [121] 2. The IDOC defendants also claim that plaintiff moved for entry of a HIPAA-qualified protective order "without issuing any discovery requests for the material the order would have potentially covered–third-party PHI." [*Id.*] 2-3. The IDOC defendants insist that, because plaintiff supposedly filed a free-standing motion for entry of a HIPAA order that was untethered to any discovery request, that motion was not subject to Rule 26(c). The Court rejects these arguments.

First, the IDOC defendants' repeated assertion that plaintiff did not issue a discovery request for the nonparty prisoners' PHI before moving for the protective order, *see* [121] 1, 2-3, 4, 5, 7, 8, 12, is unequivocally false. Plaintiff sought precisely that information in her first set of requests for production (RFP) to the IDOC defendants. RFP 40 sought "[a]ll Documents and Communications related to calling and responding to Code 3 medical alerts at Stateville from January 1, 2019, to January 1, 2025." [125-6] 21. Indeed, the IDOC defendants objected to the request for that very reason, contending that the discovery "improperly seeks protected health information and confidential medical records of third parties who are entitled to privacy." [125-6] 22.[2] Because the IDOC defendants' argument rests on a demonstrably false statement of fact, the Court rejects the argument.

Second, even accepting that plaintiff was not a "target" of discovery, Rule 26(c)(3) does not limit an award of fees to a party who seeks a protective order because she is a "target" of discovery. The Rule instead permits a "party" or "any person from whom discovery is sought" to seek a protective order. *See* Fed. R. Civ. P. 26(c)(1). Plaintiff sought such an order here, reasonably expecting that entry of a standard HIPAA order would enable her to obtain the nonparty inmates' PHI directly from its custodian (IDOC) and "protect" her from the "annoyance" and "undue burden or expense" of trying to secure the nonparties' PHI on an inmate-by-inmate basis. *Id.* (permitting court to issue protective order "to protect a party or person from annoyance" and "undue burden and expense"). Defendants elected to oppose the motion, however, and Rule 26(c)(3)–which is titled "Awarding Expenses" and incorporates Rule 37(a)(5)–clearly contemplates that a fee award may be granted to a party that prevails on such a motion.

For their part, the Wexford defendants argue at length, based on "the history, Advisory Committee Notes, and structure of the Rules," that sanctions cannot be awarded "in situations where HIPAA Motions are brought and no 'discovery is sought.'" [122] 2-8. This argument, too, fails because its major premise is false: as just

---

[2] The same false statement appears in the Wexford defendants' briefing, though with less frequency. *See* [122] 7 ("In this case, Plaintiff filed a HIPAA Motion for third-party PHI. No discovery was sought from any of the Defendants.")

seen, plaintiff did seek discovery into nonparty prisoners' PHI before moving for entry of the HIPAA order.

The Wexford defendants also emphasize what they see as the "historical precedent that protective orders were intended for use by respondents to discovery[.]" [*Id.*] 5. But this position–that a party can move for a protective only in response to a discovery request served on it–is contrary to the plain language of Rule 26(c)(1). *See* p. 4, *supra*. It is also inconsistent with Rule 26(c)(1)(H), which allows parties to seek protective orders related to the filing of sealed documents–and without regard to whether the party seeking leave to file under seal is a respondent to a discovery request. And it is contrary to widespread and longstanding litigation practice in this District, where courts regularly entertain motions for a protective order related to discovery requests that are served on nonparties. Many decisions recognize that a party to litigation "clearly has standing to seek a protective order to limit discovery from a third party." *DeLeon-Reyes v. Guevara*, Case Nos. 1:18-CV-1028 & 1:18-CV-2312, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020); *accord Castelli v. JSN Network, Inc.*, Case No. 24 CV 4574, 2026 WL 939295, at *2 (N.D. Ill. Mar. 16., 2026); *United States Gypsum Co. v. Dependable, LLC*, Case No. 22 C 268, 2024 WL 6884840, at *1 (N.D. Ill. Sept. 9, 2024); *Buonavolanto v. LG Chem., Ltd.*, No. 18 C 2802, 2019 WL 8301068, at *1 (N.D. Ill. Mar. 8, 2019); *Hobley v. Chicago Police Commander Burge*, 445 F. Supp. 2d 990, 993 n.4 (N.D. Ill. 2006). In such cases, a party to the litigation seeks a protective order limiting the scope of discovery sought by a subpoena served on a nonparty, usually on grounds–such as relevance, undue burden, or proportionality–that are insufficient to confer standing on that party to quash the subpoena. *See, e.g.*, *DeLeon-Reyes*, 2020 WL 3050230, at *2 (discussing limits on party's ability to quash subpoena served on nonparty). If the Wexford defendants' argument is to be believed, however, Rule 26 confers no authority on parties to move for a protective order in these circumstances–or on courts to award fees to movants who prevail on such motions. This is further evidence that the Wexford defendants' interpretation of Rule 26(c) is wrong.

## C.    Whether Defendants' Conduct Necessitated Plaintiff's Motion

Under Rule 37(a)(5)(A), fees may be awarded against the party "whose conduct necessitated" the relevant discovery motion. Fed. R. Civ. P. 37(a)(5)(A). Both sets of defendants insist that their conduct did not necessitate the motion because "[p]laintiff would have needed court authorization" to obtain the nonparty PHI "regardless of [d]efendants' position." [121] 3; [122] 7. The IDOC defendants further contend that their opposition was merely addressed to "scope and proportionality, and Illinois citizens' privacy," and not to "whether any protective order can lawfully enter at all, ever." [121] 3. These arguments derive from a myopic view of the discovery dispute that precipitated plaintiff's motion–and one that badly distorts the grounds on which the defendants opposed that motion and the consequences for plaintiff had the Court upheld the defense's objections.

HIPAA-qualified protective orders permit custodians of nonparty PHI to produce that PHI without the consent of the person or persons whose PHI is to be produced. *See Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 581 (N.D. Ill. 2020); *Haywood v. Wexford Health Sources, Inc.*, No. 16 CV 3566, 2021 WL 2254968, at *5-6 (N.D. Ill. June 3, 2021); *see also* 45 C.F.R. §§ 164.512(e)(1)(ii)(B), 164.512(e)(1)(v). In the vast majority of cases that have been referred to the undersigned for discovery supervision and in which a party's medical condition is at issue, a motion for entry of a HIPAA-qualified protective order is a routine step in the litigation to which no objection is raised. Contrary to defendants' arguments in the responses to the show-cause order, their opposition to plaintiff's motion would have effectively prevented plaintiff from using HIPAA to efficiently obtain the nonparty inmates' PHI. The entire point of defendants' opposition was that a HIPAA order would be insufficient to obtain nonparty PHI because "Illinois substantive law[ ] requires Plaintiff to obtain the express consent of the individuals whose PHI she wishes to obtain." [110] 3. Thus, if defendants had had their way, plaintiff would have been forced to obtain the express consent of any inmate whose PHI was responsive to her discovery request–a process that surely would made the discovery process more cumbersome and more expensive. Instead of filing an uncontested motion for entry of a HIPAA-qualified protective, plaintiff had to engage in a months-long conferral process, *see* pp. 9-10, *infra*, and contested motion practice to obtain what is and should have been a routine HIPAA-qualified protective order. The Court is compelled to conclude that defendants' conduct necessitated plaintiff's motion, thereby triggering Rule 37(a)(5)(A).

### D.  Whether the Court's Request for a Reply Brief Implies the Existence of a Genuine Dispute

Both sets of defendants contend that the Court's order instructing plaintiff to file a reply in support of her motion demonstrates the existence of a genuine dispute. [121] 4; [122] 7. The Court disagrees.

As noted above, defendants' opposition asserted that a standard HIPAA-qualified protective order would not permit them to disclose third parties' PHI because of the heightened confidentiality protections that Illinois law extends to patient medical records. *See* [110] 3-6. Candidly, that position took the Court by surprise because the undersigned had addressed–and rejected–a very similar argument in a different case in which Wexford and IDOC were parties. *See Haywood*, 2021 WL 2254968, at *5-7 (rejecting Wexford's argument that Illinois law required it to redact nonparty inmates' PHI contained in Excel spreadsheets before producing spreadsheets to plaintiff and holding that HIPAA authorized disclosure of unredacted nonparty PHI). To ensure that the Court was not missing anything, and because plaintiff's motion had not taken the preemptive step of arguing that Illinois law was not controlling on this issue, *see* [105] 4-7, 10, the undersigned ordered plaintiff to file a reply brief addressing "whether and to what extent the Illinois statute relied on by

defendants, 735 ILCS 5/8-802, applies in this case, given that plaintiff has brought claims arising under state and federal law." [111]. That briefing confirmed the undersigned's sense that a HIPAA order would permit disclosure of nonparty PHI regardless of any additional protection extended by Illinois law–and that defendants' arguments to the contrary could not be squared with either *Northwestern Memorial Hospital*, 362 F.3d at 925, or *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981). In these circumstances, the Court's request for additional party input does not signify that a genuine dispute existed over the reasonableness of defendants' position.

### E.     Whether Defendants' Opposition Was Substantially Justified

The IDOC defendants contend that they properly argued that "principles of comity and discovery sequencing warranted holding off, or at a minimum tailoring the protective order, given Plaintiff's expansive request and the presence of state-law claims." [121] 6. This argument is an unpersuasive attempt to rewrite the history of this discovery dispute. The heart of defendants' opposition to the motion was their contention that Illinois law would have made a HIPAA order inoperative to disclose nonparty PHI. Contrary to the position they take in response to the show-cause order, *see* [*id.*] 7, the IDOC defendants' original opposition brief said nothing about the sequence that discovery into plaintiff's individual claims and *Monell* claim should take. *See* [110] 1-8.[3] Furthermore, the Court recognized that defendants had made an overbreadth argument, but the Court found–and defendants offer no meaningful response–that these were not proper grounds to oppose entry of the HIPAA order:

> [W]hether and to what extent plaintiff should narrow her request for nonparty prisoners' PHI are not proper grounds for opposing entry of a HIPAA order. Once the HIPAA order is entered, defendants are free to challenge the scope of plaintiff's request for nonparty prisoners' PHI if such challenges are warranted based on the law and the facts. But the mere possibility that the request is overbroad–an issue on which the Court expresses no opinion–is no basis to oppose the request for a HIPAA-qualified order, given the law discussed above and defendants' failure to challenge the relevance of the nonparty PHI in their response brief.

[116] 3.

The Court also rejects the IDOC defendants' claim that the Court's handling of their breadth and proportionality arguments–argument that were made in an undeveloped and cursory fashion, *see* [110] 6–demonstrates there was "a reasonable

---

[3] Neither the word "sequence," "narrow," nor "tailor" appears in the defense's joint opposition brief. There is likewise no evidence before the Court to suggest that defendants ever proposed a different or more tailored HIPAA order for the parties to enter into.

disagreement about when to raise scope objections[.]" [121] 8.[4] The Court's order was clear that those objections were "not proper grounds for opposing entry of a HIPAA order" because a HIPAA order does not control the scope of discovery, only how PHI is produced during discovery. [116] 3. There was a disagreement about when to raise scope objections, but it was not a reasonable one.

The Wexford defendants begin their substantial-justification argument by "respectfully disput[ing] the assertion that their arguments were made in bad faith." [122] 11. This argument is beside the point: the Court never concluded that Wexford opposed the motion in bad faith, *see* [114] 2-3, and a finding of bad faith is not necessary to award fees under Rule 37(a)(5). *See Kim v. Hilton Constr. Grp.*, No. 17 C 7332, 2018 WL 2111240, at *1 (N.D. Ill. May 8, 2018). The Wexford defendants also contend that their "objections to the scope and proportionality of Plaintiff's proposed third-party HIPAA order and the privilege law to be applied to third-party PHI were based on principles of federalism, comity, and preemption reflected in controlling Seventh Circuit and district court precedent." [122] 12. The Court has already explained why the scope and proportionality objections were not proper grounds for opposing the HIPAA order, and one of the cases relied on by the Wexford defendants makes the same point. *See Wiley v. Young*, Case No. 21-cv-599-JPG, 2022 WL 9845764, at *2 (S.D. Ill. Oct. 17, 2022) (rejecting Wexford's opposition to motion for entry of HIPAA-qualified third-party protective order and concluding that "[t]he scope of discovery is a matter for another day"). Finally, the case law cited in plaintiff's briefing and the Court's order granting the motion "conclusively" established that federal law, not Illinois law, was controlling. *See* [105] 5, 10; [112] 1-3; [116] 3.

The Wexford defendants also contend that the Seventh Circuit has "left open the question whether the Illinois Confidentiality Act may have yielded a different result if state law claims were involved." [122] 13. That contention is hard to reconcile with *Shadur*, which held that federal privilege law would apply in a federal-question case in which a "pendant state claim" was also raised. 664 F.2d at 1061 n.3. The only question that has arguably been left open is whether to apply state or federal privilege

___

[4] Based on the additional briefing that the Court received in connection with the show-cause order, the Court is now compelled to observe that these arguments misrepresent the position taken by plaintiff during discovery. In their original opposition brief, defendants argued that "Plaintiff places no limits on the location or timeframe of third-party prisoners whose medical records are sought, nor does Plaintiff place any limitations on the types of medical conditions for which she seeks." [110] 8. Plaintiff's RFP 40–which was not before the Court when it ruled on the motion but was filed as an exhibit to plaintiff's reply to defendants' responses to the show-cause order–contains exactly these types of limitations. The discovery request was limited to (1) a six-year period between January 1, 2019, and January 1, 2025; (2) incidents occurring at Stateville Correctional Center; and (3) Code 3 medical alerts. [125-6] 21. To say that this discovery request was not proportional to the needs of the case may be debatable. But to say that "Plaintiff places no limits on the location or timeframe of third-party prisoners whose medical records are sought" is simply a misrepresentation of the record.

law when the material subject to a privilege is relevant to both the state-law claim and the federal claim. *See Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 2179170, at *1 (N.D. Ill. June 1, 2010); *Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 WL 1517975, at *3-5 (N.D. Ill. Apr. 16, 2021). But this case does not present that question because defendants never argued that the nonparty prisoners' PHI is relevant to plaintiff's state law claims. Indeed, the Court previously found that such an argument would be "highly doubtful," given that the nonparty PHI was needed only because the *Monell* claim requires plaintiff to demonstrate that other inmates had been subjected to the same allegedly unconstitutional policy that allegedly caused the death of plaintiff's decedent. [116] 3.

For these reasons and those given in the Court's prior order, the Court concludes that the Wexford defendants' opposition was not substantially justified.

### F.      Whether Plaintiff Exhausted Her Meet-and-Confer Obligations

The IDOC defendants insist that plaintiff "filed the motion without serving any discovery requests directed to nonparty PHI and without engaging in adequate video or telephonic discussions to narrow the proposal." [121] 8. The former assertion is false, as demonstrated above. The latter assertion is similarly unfounded. To begin, defendants raised no Rule 37.2 objection to plaintiff's motion in their original opposition brief. *See* [110] 1-8. More to the point, however, plaintiff has shown that "[t]he parties discussed the proposed protective order during at least four separate meet-and-confers, including three videoconferences on July 15, 22, and 30, in addition to their email correspondence on the subject." [125] 7. In contrast to defense counsel's say-so, plaintiff's representation is supported by (1) a certification signed by one of plaintiff's attorneys, *see* [106] 1; (2) an email chain from January 2025 in which defendants expressed skepticism about plaintiff obtaining "some third party information without their consent," *see* [125-2] 3, 10; (3) an email chain from March 2025 in which IDOC counsel objected that it was "too early to enter into a broad third-party HIPAA order," *see* [125-3] 2; (4) Rule 37.2 correspondence from plaintiff's counsel to IDOC counsel, dated shortly after the parties conferred on July, 15, 2025 about discovery issues, reflecting that defense counsel "would discuss with IDOC whether they will agree to entry of" a HIPAA order that would "permit the production of third-party protected health information," *see* [125-4] 6; and (5) Rule 37.2 correspondence from plaintiff's counsel to IDOC counsel, dated shortly after the parties' conferral on July 22, 2025, reflecting defense counsel's statement that his "client will likely object to the entry of a third-party HIPAA qualified protective order," *see* [125-5] at 8.

Despite the number of conferrals over a roughly six-month period, the IDOC defendants insist that plaintiff prematurely announced an impasse on the propriety of the third-party HIPAA order and failed to meaningfully "negotiate limitations or alternatives[.]" [121] 10. The Court does not credit this claim. Plaintiff repeatedly

explained why she needed the HIPAA order and offered multiple examples of similar orders that had been entered in cases in the Northern District of Illinois, including at least one case in which Wexford was a party. *See, e.g.*, [125-3] 6; [125-5] 8. In any event, defendants' objections were not relevant to whether a HIPAA order should enter, so plaintiff's alleged "failure" to engage with those objections during the meet-and-confer process does not preclude an award of fees here. Because plaintiff adequately conferred with the IDOC defendants before moving for entry of the HIPAA order, a fee award is not precluded by Rule 37(a)(5)(A)(i).

## G. Whether Other Circumstances Make a Fee Award Unjust

The IDOC defendants contend that an award of fees would be unjust because plaintiff did not request a fee award in her motion seeking entry of the HIPAA order. [121] 11. Not so. As part of its responsibility for supervising discovery in this case, the Court has an independent obligation to ensure that the parties are being reasonable and taking substantially justified positions in discovery. Thus Rule 37 states that when a discovery motion is granted, "the court *must* . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses in making the motion[.]" Fed. R. Civ P. 37(a)(5)(A) (emphasis added); *see also Rickels v. City of South Bend*, 33 F.3d 785, 786 (7th Cir. 1994) (Rule 37 "presumptively requires every loser to make good the victor's costs"). To be sure, the undersigned regularly exercises her discretion not to issue a show-cause order–even when the movant requests Rule 37 fees–if she determines that a given discovery motion was precipitated by a "genuine dispute." This case, however, was a rare instance in which the defense opposition appeared so unjustified that the Court exercised its responsibility under Rule 37 to determine if fees should be awarded even though plaintiff had not asked the Court to do so.

The IDOC defendants also contend that "the ruling was mixed in a way that matters for equity" because the Court "preserved Defendants' ability to raise proportionality and overbreadth objections in the ordinary course after entry" of the HIPAA order. [121] 11. There was no mixed ruling here, as the Court has already explained. *See* pp. 7-9 & n.3, *supra*.

Finally, the IDOC defendants argue that "[t]he case posture further counsels against fees." [121] 12. Defendants contend that "the pleadings were still shifting on who provided the care at issue," such that defendants' request to "stage discovery and defer any nonparty PHI production until narrowly tailored requests were served" was reasonable. [*Id.*]. Again, these contentions are separate and apart from whether a HIPAA order should enter. As the Court explained, whether plaintiff's request for nonparty PHI was premature or overbroad cannot justify refusing to enter a HIPAA order given that there is a *Monell* claim (with its attendant need to show that other persons experienced the same unconstitutional policy or widespread practice that plaintiff's decedent did) in the case.

10

## H.    Whether a Fee Award Would Be Unprecedented

Both sets of defendants contend that awarding fees based on their opposition to a motion for entry of a HIPAA-qualified protective order would be unprecedented. *See* [121] 1 ("The undersigned's caselaw research has not revealed any case in which the grant of an opposed third-party HIPAA order resulted in an award of fees."); [122] 9-11 (citing multiple cases in which a defendant, sometimes Wexford, opposed entry of similar HIPAA order but fees were not awarded). This contention is not persuasive.

For one thing, plaintiff has identified a case in which fees were awarded to a party that prevailed on an opposed motion for entry of a HIPAA order, *see Bryant v. Wilson*, Case No. 15-10207, 2015 WL 6457568, at *1 (E.D. Mich. Oct. 26, 2015), and another case in which the court invited the party that prevailed on an opposed HIPAA motion to file a fee petition, *see TruBridge, Inc. v. Crook Cnty. Med. Servs. Dist.*, Civil Action No. 1:24-190-KD-N, 2025 WL 994185, at *2-3 (S.D. Ala. Apr. 2, 2025). A fee award would not be "unprecedented," as defendants incorrectly claim.

For another, the cases cited by Wexford in which no fees were awarded have only limited persuasive value here. This is because the resolution of discovery disputes and the decision whether to award attorney's fees are committed to the "extremely broad discretion" of district judges and magistrate judges. *Chavarria v. Bros. Grp. Fleet, Inc.*, No. 21 C 5174, 2022 WL 3543541, at *2 (N.D. Ill. Aug. 18, 2022) (internal quotation marks omitted). "Being a range, not a point, discretion allows two decision-makers–on virtually identical facts–to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion." *Id.* Accordingly, whether a different court declined to award fees in a different case after resolving a similar discovery dispute sheds little, if any, light on whether fees are warranted in this case. Moreover, the undersigned generally refrains from issuing a show-cause order to the losing party in a discovery dispute–and awards Rule 37 fees in an even smaller number of cases. This is because fee awards can increase strains in the discovery process and consume valuable Court and attorney time. As already explained, however, this is a rare case in which defendants' opposition was so lacking in justification that an award of fees is warranted under Rules 26(c)(3) and 37(a)(5)(A).

## I.    Whether Defense Counsel Should Be Sanctioned for Making False Statements of Material Fact in Response to the Show-Cause Order

The core of the IDOC defendants' response to the show-cause order is the claim that plaintiff never served a discovery request for the third-party inmates' PHI. This statement, which the undersigned has demonstrated to be unequivocally false, appears seven times in the IDOC defendants' brief:

11

- "Plaintiff is not a target of discovery, nor is Plaintiff seeking discovery." [121] 2.

- "Again, since plaintiff has not issued any discovery requests that cover third-party PHI, Plaintiff's proposed HIPAA order has been about a hypothetical discovery request (the scope of which has not been shared with Defendants), not an actual one." [121] 3.

- "Here, though, no such discovery requests have been propounded, meaning that is unclear what 'discovery is sought[.]'" [121] 4.

- "No Rule 34 requests for third-party PHI were served, so there was no concrete discovery sought to which Rule 26(c) and Rule 37(a)(5) could attach." [121] 5.

- "Although Plaintiff sought a protective order before serving any discovery request, Defendants explained that scope and proportionality are appropriate subjects for early case management[.]" [121] 7.

- "Here, Plaintiff filed the motion without serving any discovery requests directed to nonparty PHI[.]" [121] 8.

- "Plaintiff pressed for a blanket HIPAA order before serving requests directed to third-party PHI, while the pleadings were still shifting on who provided the care at issue." [121] 12.

The Wexford defendants rely on the same false statement, but to a lesser degree than the IDOC defendants: "In this case, Plaintiff filed a HIPAA Motion for third-party PHI. No discovery was sought from any of the Defendants." [122] 7. At the same time, the Court recognizes that the Wexford response "adopt[ed] and incorporate[d] by reference those arguments raised by [the] IDOC defendnats [*sic*] in their response" to the show-cause order. The false statement was thus an integral component of Wexford's own response. [5]

The Court is troubled that both sets of defendants apparently sought to avoid the imposition of fees and costs by making a false statement of fact to the Court. The Court is even more troubled because the Court would have had no basis for evaluating the accuracy of defendants' representations had plaintiff not moved for leave to file a

---

[5] In any event, Wexford's briefing conveys the distinct impression that no request for nonparty prisoners' PHI had been served. *See* [122] 2 (sanctions not permissible "for protective orders in which no discovery is sought from the opposing party"); [*id.*] 3 (same); [*id.*] 7 ("there is no precedent to invoke sanctions against a party for merely opposing a HIPAA order–especially when no discovery is sought from that party"); [*id.*] 10 (sanctions should not be imposed "because no 'discovery was sought from' the Defendants in connection with Plaintiff's motion").

reply to defendants' responses to the Court's show-cause order and submitted the relevant discovery request for the Court's consideration. Indeed, plaintiff sought leave to file the reply to address what she correctly identified as the IDOC defendants' "falsely claiming that Plaintiff had not served pertinent discovery requests." [123] 2. Despite plaintiff's filing of the reply brief on September 29, 2025, neither the IDOC defendants nor the Wexford defendants moved to withdraw their false representation or otherwise correct the record in the intervening six-and-a-half months. The Court is thus troubled, finally, by defense counsels' failure to correct the record. Accordingly, the attorneys who signed the responses to the show-cause order on behalf of IDOC, *see* [121] 13, and Wexford, *see* [122] 15, must show cause why they should not be sanctioned under 28 U.S.C. § 1927 and the Court's inherent authority, or otherwise be admonished, for making a false statement of material fact to the Court and failing to correct a false statement of material fact made to the Court.

### Conclusion

For the reasons set forth above, and in accordance with Fed. R. Civ. P. 26(c)(3) and Fed. R. Civ. P. 37(a)(5)(A), the IDOC defendants and the Wexford defendants must pay the reasonable attorney's fees and costs that plaintiff incurred bringing her motion for entry of a HIPAA-qualified protective order. Because both sets of defendants opposed the motion, the IDOC defendants shall pay 50% of the award and the Wexford defendants shall pay 50% of the award. The parties shall proceed under Local Rule 54.3 to determine the amount of fees to which plaintiff is entitled. By May 11, 2026, the attorneys who signed the responses to the show-cause order on behalf of the IDOC defendants, *see* [121] 13, and the Wexford defendants, *see* [122] 15, must show cause why they should not be sanctioned under 28 U.S.C. § 1927 and the Court's inherent authority, or otherwise be admonished, for making a false statement of material fact to the Court and failing to correct a false statement of material fact made to the Court.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: April 20, 2026**